COMMONWEALTH *vs.* RAYMOND F. LEHAN.

Suffolk. November 4, December 2, 1963. — March 6, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Search and Seizure. Arrest. "Threshold" Police Inquiry. Constitutional Law, "Threshold" police inquiry. Police. Evidence, Illegally seized material.*

The provision of G. L. c. 41, § 98, that "During the night time . . . [police officers] may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going," permits a police officer a reasonable, brief threshold inquiry of a person whose suspicious conduct while abroad at night suggests that he has committed, is committing, or is about to commit a crime, and is constitutional. [201, 204]

Where it appeared in a criminal prosecution that police officers at night saw the defendant, a suspect in connection with housebreaks, carrying two large cardboard cartons down a street, that he told the officers the cartons contained "stuff" belonging to his wife which he was taking "down to his room on" the street since "he was moving out because his wife and he had an argument," and that he gave no satisfactory answer to a question as to why his personal items were not included, the officers had reasonable grounds for the brief initial inquiry and for continuing to question the defendant for a short period after his first answers even though they did not have ground reasonably to believe that the defendant had committed a felony. [199–200, 204]

The right of threshold inquiry by a police officer does not include the right to search for evidence of crime in the absence of probable cause for arrest, although the officer may act reasonably to assure that the inquiry can proceed in a manner consistent with his safety. [204–205]

G. L. c. 41, § 98, authorizing a police officer to arrest one abroad at night whom he has reason to suspect of "unlawful design" and who does not give a satisfactory account of himself, does not authorize an arrest without probable cause. [205]

Motions to suppress evidence, heard before the presentation of evidence at the trial of indictments for possession of burglarious implements and for breaking and entering, should not have been denied where it ap-

peared that at the hearings on the motions there was evidence that, after police officers had properly exercised the right of threshold inquiry of the defendant as he was carrying two cardboard cartons down a street at night, the officers looked into the cartons in order to verify the defendant's statement as to their contents and there was no evidence that the officers inspected the cartons with the defendant's consent or to search for weapons; and, the defendant having duly saved exceptions to the denial of the motions, it was error to admit the contents of the cartons in evidence at the trial, even though the defendant then testified that he had consented to an inspection of the cartons.   [205–206]

An arrest without a warrant was lawful where it appeared that at night, in the course of a proper exercise by police officers of the right of threshold inquiry of the defendant as he was carrying cardboard cartons down a street, he gave the officers an improbable story with respect to the contents of the cartons, that the officers went with him to his wife's house to verify his story and she made statements which led them to believe that his story in all probability was false, and that they then arrested the defendant, even though the officers had illegally inspected the cartons and detained the defendant and had not been notified of any particular crime; and, if later the defendant was searched at a police station, that search was incident to a lawful arrest and the articles then found on him would be admissible in a criminal proceeding against him. [206–207]

An article voluntarily surrendered to police officers by one under arrest would be admissible at his subsequent criminal trial even though the officers had no warrant to seize the article.   [207]

INDICTMENTS found and returned on April 2, 1963.

Motions to suppress evidence were denied in the Superior Court by *Dewing, J.*, and the cases were tried before him.

*Wilbur G. Hollingsworth* for the defendant.

*Joseph A. Sullivan,* Assistant District Attorney, for the Commonwealth.

*James W. Bailey,* Assistant Attorney General, for the Commonwealth, submitted a brief.

*Lee H. Kozol,* Assistant Attorney General, Director of the Division of Civil Rights and Liberties, amicus curiae, submitted a brief.

WHITTEMORE, J.   These are appeals under G. L. c. 278, §§ 33A–33G, as amended, from concurrent sentences upon convictions on two indictments: (1) for possession of burglarious implements, and (2) for breaking and entering a dwelling house in the night time with intent to steal.

The defendant contends that it was error to deny his two motions to suppress evidence, the first filed and heard be-

fore trial and the second filed and heard after the jury had been empanelled. The defendant's exceptions were duly saved.

At the hearings on the motions a police officer testified in substance as follows: On February 21, 1963, he and another officer were on duty in a patrol car on Main Street in the Charlestown district of Boston. They saw the defendant (Lehan) carrying two cardboard cartons or large boxes. Lehan was known to the officer who testified as the man whom he had been assigned to watch for a two week period three and a half years before "in relation to . . . his activities in the early morning hours . . . [there having been] numerous . . . housebreaks . . . in the neighborhood." The officers stopped their automobile and asked Lehan what he was carrying. Lehan replied that it was stuff belonging to his wife. The officers asked where he was going with it. Lehan replied that he was on his way "down to his room on Main Street." When asked where the room was Lehan said it was in the Clipper House and "he was moving out because his wife and he had an argument, and [he] was taking the stuff with him." The officers inquired what was in the boxes and Lehan said it was a hair dryer and silverware, gifts and presents. The officers then inquired why "if he was moving out on his wife . . . he didn't have shaving gear . . . [or] his own personal items, rather than his wife's items, and he said that was it." The officers then looked in the cartons — "he told us what was in there, and we looked for ourselves." The cartons had loose end flaps.

The officers asked Lehan if he would accompany them to his wife's house where they could talk with her. Lehan said, "Yes." Q. "If he wanted to get out of the police car, would you let him . . .?" A. "If he wanted to get out, we would have placed him under arrest at that time." The three went in the automobile to Bartlett Street and the officer who did not testify went into the house and talked with Lehan's wife. When the officer came out he said, "Raymond, you are under arrest. Your wife says that the stuff isn't hers, and furthermore when you left the house

tonight you were on very good conditions''; Lehan and his wife had parted ''on good terms, had no argument.'' Lehan replied, ''That is my story.'' It was then a little before 11 P.M.

The officers took Lehan to the police station. At about 12:30 or 12:45 A.M., February 22, word came to the station of a burglary in which, as it turned out, the articles Lehan had been carrying had been stolen. At 12:50 A.M. Lehan was booked on the charges later embodied in the indictments. In the meantime, Lehan was questioned and denied guilt.

Testimony of the officers at the trial somewhat amplified the foregoing testimony. That testimony indicated that Lehan's walk was rapid, that he waved to the officers as they passed in their car, and that his coat bulged. It also showed that a search of Lehan had disclosed in his pockets a watch in a case, a manicure set, a file, a screw driver, powder, and perfume. According to the officers this search took place at the police station. The officers also testified at the trial that after 12:30 A.M. they told Lehan that the owner of these articles and those seen on Main Street had identified them and had said that a radio and sewing machine were also missing. Lehan denied knowledge of the radio but said that the sewing machine was in his back yard under the porch of his house and that he would lead the officers to the machine. He did go with them in the police car, told them where to look, and remained in the car while one of them retrieved the sewing machine from the back yard. Lehan took the stand at the trial and testified that he told the officers what was in the boxes and that when asked, ''Did I mind if they would have a look?'' he replied, ''Yes, all right.'' He also testified that his pockets were searched when he was stopped on Main Street.

The two cartons and their contents were in evidence and are before us. One, an apparently new carton, is labelled on each of its six faces ''Deluxe Hair Dryer.'' The cartons measure in inches, respectively, 17 x 11½ x 3⅞ and 15 x 15 x 5½. With their contents they weigh about seventeen pounds. In each is an inner box which has to be removed

from the carton to discover the contents. The inner boxes contain articles which agree with what Lehan told the officers were in the cartons.

The first motion to suppress recited that on February 21, 1963, Lehan was "illegally arrested and certain articles taken from his person and home" and moved to suppress all such articles. The second motion was substantially the same as the first.

To justify the initial detention and search, the Commonwealth relies on G. L. c. 41, § 98, which provides, in part, as follows: "During the night time . . . [police officers] may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going . . . . Persons so suspected who do not give a satisfactory account of themselves . . . may be arrested by the police, and may thereafter be safely kept by imprisonment or otherwise unless released in the manner provided by law, and taken before a district court to be examined and prosecuted."

This statute may be thought to restate the powers of the New England night watch[1] and may have been a forerunner of the Uniform Arrest Act, § 2.[2] This provision of the uniform act has been adopted with some variations in New Hampshire (N. H. Rev. Sts. Anno. [1955] c. 594, § 2); Rhode Island (R. I. Gen. Laws [1956] § 12–7–1); and Delaware (Del. Code Anno. tit. 11, § 1902 [1953]).

1. We do not agree with Lehan that he was arrested or unlawfully detained when accosted on Main Street. That the police may make brief threshold inquiry of a citizen has been generally assumed. "It is obvious that an officer may

---

[1] 36th Report of the Judicial Council (1960), Pub. Doc. No. 144, pp. 68–70.

[2] See Warner, The Uniform Arrest Act, 28 Va. L. Rev. 315, 319. Section 2 of the Uniform Arrest Act states: "(1) A peace officer may stop any person abroad who he has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and whither he is going. (2) Any person so questioned who fails to identify himself or explain his actions to the satisfaction of the officer may be detained and further questioned and investigated. (3) The total period of detention provided for by this section shall not exceed two hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime." For complete text see Warner, *supra,* 343–347.

ask an individual a question . . . provided that he does not confine or restrain the individual without his consent." Remington, The Law Relating to "On the Street" Detention, Questioning and Frisking of Suspected Persons and Police Arrest Privileges in General, J. of Crim. L., Criminology and Police Science, 386, 389 (1960). *Commonwealth v. Merrick,* 255 Mass. 510, 512–513. *People v. Henneman,* 367 Ill. 151, 154. See comment, 37 Mich. L. Rev. 311 (1938).

*Henry v. United States,* 361 U. S. 98, appears to hold that officers could not stop an automobile on suspicion unless they then had probable cause to believe that the occupants had committed a crime. The dissent points out that the government "unnecessarily" had conceded that the "arrest" was made when the car was stopped; the dissenters took the view that the "suspicious activities of the petitioner . . . warranted the stopping of the car," that cartons in the car in open view gave the officers cause to believe that a crime was being committed, and that this warranted the ensuing arrest and search.

We think a more recent case, *Rios v. United States,* 364 U. S. 253, 262, recognizes that some threshold inquiry even with brief detention may be constitutional though cause to arrest is absent. The court said "[T]he Government argues that the policemen approached the standing taxi only for the purpose of routine interrogation, and that they had no intent to detain the petitioner beyond the momentary requirements of such a mission. If the petitioner thereafter voluntarily revealed the package of narcotics to the officers' view, a lawful arrest could then have been supported by their reasonable cause to believe that a felony was being committed in their presence. The validity of the search thus turns upon the narrow question of when the arrest occurred, and the answer to that question depends upon an evaluation of the conflicting testimony of those who were there that night."[3]

---

[3] One Federal case decided after the *Henry* case has apparently recognized a limited privilege of detention. *United States v. Bonanno,* 180 F. Supp. 71 (S. D. N. Y.) (Kaufman, J.). After the decision in the *Bonanno* case, which involved a motion to suppress, the trial resulted in verdicts of guilty. On appeal the counts involved were ordered dismissed on grounds not touching the

*People* v. *Mickelson,* 59 Cal. 2d 448, 451–452, holds that a State rule authorizing a brief, preliminary, on-the-street detention does not violate the Federal Constitution. The opinion interprets the *Henry* and *Rios* cases and *Brinegar* v. *United States,* 338 U. S. 160, as elaborating a Federal rule that would bar any detention unless probable cause exists. The court held that the Federal constitutional proscription of unreasonable searches and seizures does not bar reasonable State rules covering on-the-street interrogation.

*Ker* v. *California,* 374 U. S. 23, was decided after the *Mickelson* case. It holds that Fourteenth Amendment due process embodies the Fourth Amendment standard which requires a warrant to search a suspect's domicil unless the search is incident to a lawful arrest and is of reasonable scope. 374 U. S. 23, 30–35, 41–42. However, it was also said that the States are not precluded from developing workable rules governing arrests, searches, and seizures to meet "the practical demands of effective criminal investigation and law enforcement" provided those rules do not violate the constitutional proscription of unreasonable searches and seizures. 374 U. S. 23, 34. The case thus recognizes that, although established Federal standards are regarded as binding on the States, there will be incidents of the exclusionary rule not so established which State courts may fashion, at least in the first instance.[4]

This court has not yet dealt with the problems raised by threshold police inquiry. *Commonwealth* v. *McCleery,* 345 Mass. 151, was decided after the *Henry* and *Rios* cases;

---

decision on the motion to suppress. *United States* v. *Bufalino,* 285 F. 2d 408 (2d Cir.). However, the decision on the motion to suppress was questioned. *Id.* at 420, n. 3 (Clark, J., concurring). The *Bonanno* case was later cited approvingly in *United States* v. *Vita,* 294 F. 2d 524, 530 (2d Cir.). The *Vita* case did not cite the *Henry* case and said that a detention for a reasonable time for questioning to determine if a defendant should be arrested does not violate § 5 (a) of the Federal Rules of Criminal Procedure (1946), 327 U. S. 835, requiring that an arrested person be taken before a commissioner without unnecessary delay.

[4] The issue in the *Ker* case was the validity of an unannounced entry into an apartment by means of a passkey, the police having probable cause to arrest the occupants. Four Justices (a fifth concurred in the result) held that the California judicially declared rule that an explanation and a demand for admission are not required if the arrest would be frustrated was not an unreasonable rule. Four Justices were of the opinion that the unannounced intrusion violated the constitutional requirement of reasonableness.

there an officer stopped an automobile because of illegal equipment and after verifying the driver's credentials proceeded to rummage through the car. See G. L. c. 90, §§ 7, 9, 11 (all as amended), and 25. The authority of an officer to stop a pedestrian or motorist for threshold inquiry was not involved.

We are of opinion that G. L. c. 41, § 98, constitutionally permits a brief threshold inquiry where suspicious conduct gives the officer "reason to suspect" the questioned person of "unlawful design," that is, that the person has committed, is committing, or is about to commit a crime. What is reasonable within the principle of threshold inquiry must be decided in each case. An individual who acts in a suspicious way invites threshold investigation. It does not unreasonably invade the individual's right of privacy to hold that the price of indulgence in suspicious behavior while abroad at night is a police inquiry. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Sup. Ct. Rev. 46, 57–65; Leagre, The Fourth Amendment and the Law of Arrest, 54 J. of Crim. L., Criminology and Police Science, 393, 406–419 (1963); Remington, The Law Relating to "On the Street" Detention, Questioning and Frisking of Suspected Persons and Police Arrest Privileges in General, *supra,* at 386–388; Traynor, Mapp v. Ohio at Large in the Fifty States, 1962 Duke L. J. 319, 333–334. But see Kamisar, Book Review, 76 Harv. L. Rev. 1502, 1510–1512 (1963); Foote, Law and Police Practice: Safeguards in the Law of Arrest, 52 Northwestern U. L. Rev. 16, 36–45 (1957).

Turning back to the testimony of the officer on the motions to suppress and applying these principles we conclude that, although the officers did not have ground reasonably to believe that Lehan had committed a felony, they did have reasonable grounds for brief initial inquiry, and, in view of the first answers, to continue the questioning. Of possible explanations of Lehan's unusual conduct and his first answers, one, and by no means the least likely, was theft.

2. The authorities discussed in the foregoing section lead us, however, to the conclusion that the right of thresh-

old inquiry does not include the right to search for evidence of crime in the absence of probable cause for arrest. Hence the officers might not constitutionally inspect the packages without Lehan's consent. We are of the opinion, however, that an officer may act reasonably to assure that the inquiry can proceed in a manner consistent with the officer's safety. *People* v. *Martin,* 46 Cal. 2d 106. The Uniform Arrest Act, § 3.[5] See Leagre, The Fourth Amendment and the Law of Arrest, *supra,* at 419. But the inspection of the packages was to verify Lehan's story, not to search for weapons. The Commonwealth does not argue otherwise. There was no evidence on the motions to suppress that warranted a different conclusion. *People* v. *Simon,* 45 Cal. 2d 645, 650. *People* v. *Mickelson, supra,* 452–454. Furthermore, this is the first time that any rule as to on-the-street inquiry has been stated in this Commonwealth. In the circumstances the denial of the motions to suppress ought not to be sustained on the possibility that the judge might have inferred that the officers were searching for weapons. The provision in G. L. c. 41, § 98, for arrest of a suspect who fails to give a satisfactory account of himself does not validate the inspection of the packages. As noted, arrest without probable cause is unconstitutional. *Henry* v. *United States,* 361 U. S. 98, 100–101. *Ker* v. *California,* 374 U. S. 23, 30–35. We do not construe G. L. c. 41, § 98, to authorize arrest without probable cause. We do not consider a threshold inquiry an arrest. See point 1 above.

We assume that if the judge had found (*Steele* v. *United States No. 2,* 267 U. S. 505, 510–511) that Lehan had freely consented to the inspection of the packages, the inspection would not have violated Lehan's rights. *United States* v. *Burke,* 215 F. Supp. 508, 511 (D. Mass.). See *Watson* v. *United States,* 249 F. 2d 106, 108 (Ct. App. D. C.). The officer's testimony did not permit the conclusion that the officers had asked or obtained Lehan's consent. The motions to suppress should have been granted as to the articles

---

[5] Section 3 reads in part, "A peace officer may search for a dangerous weapon any person whom he has stopped or detained to question . . . whenever he has reasonable ground to believe that he is in danger if the person possesses a dangerous weapon. . . ."

inspected on Main Street and those articles should have been excluded at the trial.

Lehan's subsequent testimony indicative of assent to the inspection does not make the error harmless. We assume this testimony would have permitted the conclusion that Lehan gave assent free of the coercion of police inquiry. This testimony, however, was given at the trial when the issue of suppressing the exhibits was not before the court. Lehan was entitled to have the question of consent ruled on by the judge when the issue of the admissibility of the seized articles was before him. In the circumstances we are unable to rule that the articles seized on Main Street were properly in evidence. Their status in subsequent proceedings, however, will be determined by the evidence then produced.

3. The motions were also addressed to the articles taken from Lehan's person and his home and although the arguments before us and the testimony taken on the motions to suppress concerned only the articles inspected on Main Street, the status of the other articles may be in issue at another trial.

We rule that if the search of Lehan took place at the police station, it was incident to a lawful arrest. *Commonwealth v. Holmes,* 344 Mass. 524, 525. What the officers had learned from Mrs. Lehan, with what he had told them, gave them reasonable cause to believe that he had committed a felony. This was so quite apart from their inspection of the boxes which had confirmed what Lehan had said as to their contents. Reliable hearsay may provide probable cause to support an arrest without a warrant. See *Jones v. United States,* 362 U. S. 257, 267–272, and cases cited. Compare *Wong Sun v. United States,* 371 U. S. 471, 479–482. It is not determinative that the officers had not been notified of a particular crime. See *Henry v. United States,* 361 U. S. 98, 104.

The arrest, we think, was not the result of an illegal inspection of the boxes or of an illegal detention prior to the interview with Mrs. Lehan. We need not determine whether Lehan was illegally forced to accompany the offi-

cers — that is, arrested — when they asked if he would accompany them and he agreed to do so. Nor need we determine whether the privilege of threshold inquiry included a right to require him to accompany them for verification of his story. It was their duty, after hearing Lehan's improbable answer to their initial questions, to inquire of Mrs. Lehan. This duty did not depend upon their inspection of the boxes or upon Lehan's presence. Having ascertained through Mrs. Lehan that Lehan's story was in all probability false, they had cause to arrest Lehan. For purposes of the arrest prior to any search they would have been warranted in assuming that Lehan had rightly described the contents of the boxes. Lehan's immediate availability for arrest, of course, stemmed from his having accompanied the officers. But even if that was an illegal detention we think the officers were not obliged to let Lehan escape when they had cause to arrest him. As indicated, probable cause for the arrest was shown by (1) Lehan's statement on valid initial inquiry and (2) Mrs. Lehan's information. We hold, therefore, that the arrest did not stem from any "exploitation of . . . [the] illegality," if such it was, of securing Lehan's availability, or from any exploitation of the earlier verification of the contents of the boxes. *Wong Sun* v. *United States,* 371 U. S. 471, 488. *Commonwealth* v. *Palladino,* 346 Mass. 720, 725. If Lehan's pockets were searched on Main Street the principles stated in point 2 of this opinion will be applicable.

We express no opinion as to whether the sewing machine was obtained during an illegal search. Lehan, under arrest, could, if free of compulsion, voluntarily surrender it. *United States* v. *Burke,* 215 F. Supp. 508, 511 (D. Mass.). See *Watson* v. *United States,* 249 F. 2d 106, 108 (Ct. App. D. C.). If the judge should find that the police came by it in this way, it would be admissible. If the evidence was not volunteered and was seized without proper warrant, it must be excluded.

4. The judgments are reversed and the causes remanded to the Superior Court for proceedings consistent herewith.

*So ordered.*