COMMONWEALTH *vs.* CLIFFORD A. ROY.

Norfolk.    March 1, 1965. — May 10, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Practice, Criminal,* Suppression of evidence; Assistance of counsel. *Search and Seizure.* *"Threshold" Police Inquiry.* *Police.* *Arrest.* *Evidence,* Illegally seized material, Presumptions and burden of proof, Admissions and confessions, Competency. *Law or Fact.* *Constitutional Law,* "Threshold" police inquiry, Assistance of counsel. *Breaking and Entering.* *Larceny.*

In the absence of unusual circumstances it is not good practice to grant the defendant in a criminal case a hearing on a motion to suppress evidence not identified in the motion and to allow the defendant to use the hearing as a device to ascertain the Commonwealth's evidence and the means used to obtain it. [227]

A motion to suppress evidence in a criminal case should specify the evidence sought to be suppressed, and the hearing on the motion should be

directed to the evidence specified and to the alleged grounds for its suppression.   [227]

Whether there had been an illegal search was a question of law for the court in a criminal case.   [229]

The defendant in a criminal case has the burden of establishing illegality of a search alleged by him as a ground for suppression of evidence. [229]

Where, in a criminal case involving charges against the defendant of breaking and entering and larceny in a town wherein there had recently been a series of house breaks, it appeared that in the course of questioning of the defendant and another man by police officers on a street the defendant voluntarily opened a suitcase and a filing case inside the suitcase at the request of one of the officers, that the officers did not touch either the suitcase or the filing case, and that after some further questioning the defendant and the other man voluntarily accompanied the officers to a police station as requested by one of the officers, the suitcase and the filing case were not rendered inadmissible at the trial on the alleged ground of illegal search.   [229–230]

Police officers, by reason of their knowledge that there had been a series of recent house breaks in their town, of the nature of replies made by two men during questioning of them by the officers on a street, and of articles in the possession of the men voluntarily revealed by them to the officers, had probable cause, justifying arrest of the men, to believe that they had committed a felonious house break, even though the officers were not informed until later that such break had actually occurred. [230]

After a police officer at a police station had informed the defendant in a criminal case of his right "not . . . to talk" without counsel present and his right to use the station telephone to engage counsel, and the defendant had declined use of the telephone, saying that he had "been through this before" and was "a graduate of Sing Sing," a later statement by him in effect admitting his commission of the crime involved in the case was not rendered inadmissible at his trial under the Sixth and Fourteenth Amendments of the Federal Constitution by the fact that he was without counsel when he made the statement.   [230–231]

Conviction of a defendant upon charges of breaking and entering a dwelling and larceny therein was warranted by evidence of a statement made by him in effect admitting commission of the crimes and evidence of his possession of articles identified as having been stolen from the dwelling.   [231–232]

A defendant in a criminal case was entitled to a directed verdict of not guilty where there was no evidence of his commission of the crime charged beyond statements by another person which, although implicating the defendant, were not admissible as against him, and statements by the defendant to police which, correctly interpreted, constituted an unequivocal denial of having participated in the crime.   [232]

INDICTMENTS found and returned in the Superior Court on October 5, 1964.

A motion to suppress evidence was heard by *Lappin, J.*, and the indictments were tried before him.

*Ronald J. Chisholm (Edgar A. Rimbold* with him) for the defendant.

*A. T. Handverger,* Assistant District Attorney, for the Commonwealth.

Kirk, J. The defendant Roy, with one Lamm, was tried and found guilty on three indictments.[1] Indictment 38,432 charged, in count 1, that Roy and Lamm on September 17, 1964, at Milton broke and entered the dwelling of Paul G. Queeney with intent to commit larceny, and, in count 2, that on the same day in the named dwelling they committed larceny. Indictment 38,434 charged both with the possession of burglar's tools on September 17, 1964. Indictment 38,527 charged, in count 1, that Roy and Lamm on August 29, 1964, at Brookline broke and entered the dwelling of Paul F. Clark with intent to commit larceny, and, in count 2, that on the same day in the named dwelling they committed larceny. The trial was subject to G. L. c. 278, §§ 33A–33G. The case comes to us on Roy's appeal accompanied by seventeen assignments of error. We have a summary of the record and the transcript of evidence.

We first consider assignment 2 based on the denial of the "defendant's Motion to Suppress Evidence on the ground that the evidence was obtained in violation of . . . [the defendant's] rights protected by the Fourth and Fourteenth Amendments to the Federal Constitution." Nowhere in the record or in the transcript does it appear what evidence was sought to be suppressed by the motion as filed. The judge nevertheless, before trial, granted a hearing on the motion. The transcript of testimony taken at the hearing consists of eighty-nine pages. At the conclusion of the hearing the defendant orally moved that each of several items of personal property be suppressed and that several statements of witnesses be "suppressed." These motions,

---

[1] The judgments against Lamm have been vacated, and, on motion of the district attorney, the indictments against him have been dismissed.

and the original general motion to suppress, were rightly denied for reasons later to be mentioned.

We think, however, that it is our duty to comment upon the procedure which was followed. Although the granting of the preliminary hearing was doubtless originally intended by the judge to safeguard the defendant's constitutional rights, it developed into a far ranging and free wheeling expedition in which the defendant was able to search out all of the evidence, physical and testimonial, which the Commonwealth had against the defendant. For example, items of personal property, the existence and custody of which were disclosed by the defendant's examination of the Commonwealth's witnesses, were at the defendant's request produced by the Commonwealth, marked for identification and, at the close of the preliminary hearing, became the subject of the defendant's oral "motions to suppress." This procedure is not consistent with good trial practice. It is prejudicial to the Commonwealth's right to a fair trial. In the absence of a clear showing of unusual circumstances that the procedure is warranted, it should not be permitted. Evidence which has been obtained as the result of an allegedly illegal search and seizure is properly the subject of a pre-trial motion to suppress. *Commonwealth* v. *Lewis,* 346 Mass. 373, 382. "The judge, however, is not required to make, and in the nature of things cannot be required to make, a decision on such a motion, where, as here, the evidence sought to be suppressed is not identified by the moving party." *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34. Nor may the judge be required to permit counsel before trial to examine the Commonwealth's witnesses in order to ascertain what evidence the Commonwealth has and the means used to obtain it. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 34. A pre-trial motion to suppress, based on an alleged illegal search and seizure, should specify the evidence sought to be suppressed, and the hearing should be directed to the specified evidence and to the grounds alleged for its suppression.

We return to a consideration of the assignments of error. Several of them relate to the admission of exhibits and to

rulings on testimony at the trial. The issues raised by these assignments require a statement of the relevant evidence which, as given at the trial, was substantially the same as that given at the preliminary hearing. Just prior to September 17, 1964, a series of house breaks had taken place in Milton. As each break was discovered, the Milton police were informed at roll call. At about 2 P.M. on September 17, 1964, Officers Green and Murphy of the Milton police department, in uniform, and riding in a police car, stopped to make a duty call from a police box at the corner of Reedsdale Road and Brook Road. After making the call, Officer Green noticed a young man (who later proved to be Lamm) at a bus stop across the street, standing beside a suitcase and with a paper bag under his arm. When Green looked at the young man (Lamm) the latter looked away from Green. Green decided to question him. Lamm gave his name as Thomas Young. He had no identification. Green had talked to Lamm for about "a second" when an older man (who later proved to be Roy) came out of a nearby drug store and joined them. As identification, Roy showed a Massachusetts General Hospital card bearing the name Thomas Gilday and an address on Chandler Street, Boston. Lamm was asked by Green if he knew the name of the older man. In answer Lamm said that Green already knew the older man's name and he would not tell him again. Roy was asked what was in the suitcase and replied, "Clothes." When asked if he would mind opening the suitcase, Roy said, "No; I have nothing to hide." Roy opened the suitcase. In it was a "ten by ten by four" metal filing case or cabinet, but no clothes. Roy explained that the younger man must have forgotten to pack the clothes. Roy said the filing case was locked. Green said that he could see that the lid was open and asked if Roy would "mind opening that." Roy opened it himself, revealing papers which, he said, were "[i]nsurance papers." He said that he earned his living as a "TV repairman." The initials "P. Q." were on the suitcase. When asked by Officer Murphy what the initials stood for, Roy said that the suitcase belonged to his uncle, but he "refused to give

us any name of his uncle.''[2]   Green then asked Roy if he
would ''mind coming to the police station to get this con-
fused story you're telling us straightened out.''   Lamm
and Roy voluntarily accompanied the police to the station
where they arrived at approximately 2:15 P.M.   The of-
ficers at that time did not know that Queeney's dwelling
had been broken into.   Lamm was interrogated first, apart
from Roy.   Within fifteen minutes he admitted participa-
tion in six house breaks including one at the Queeney resi-
dence.   At about 2:20 P.M. while the interrogation of Lamm
was in progress and before any questioning of Roy at the
police station had begun, Lieutenant Giuliano, head of de-
tectives, said to Roy, ''I am going to inform you that you
do not have to talk unless you have an attorney present,
and you are entitled to use the station telephone for the
purposes of engaging counsel or communicating with fam-
ily and friends.''   Roy replied, ''Look it, you're only a
youngster.   I've been through this before.   I'm a gradu-
ate of Sing Sing.''   He said that he did not want to use
the telephone.   Later, at a confrontation of Lamm and
Roy, the latter said to police, ''I'll go for this break that
you have me for but I won't go for anything else that
Lamm says.   I'm a graduate of Sing Sing.   I know the
score.''

Assignments 3 and 4 are based, in part, on the contention
that the suitcase and filing cabinet should have been ex-
cluded because there was an illegal search and seizure.
Whether there was an illegal search is a question for the
judge.   *Commonwealth* v. *LaBossiere,* 347 Mass. 384, 387,
and cases cited.   The burden of proof of the issue is on the
defendant.   *Commonwealth* v. *Fancy, ante,* 196, 202.   The
judge's conclusion was right.   All of the evidence at

---

[2] The defendant contends that it does not appear from the transcript
whether the inquiry about the initials took place during the street interroga-
tion or later at the station house.   In context it seems clearly inferable that
the inquiry took place during the street interrogation by Green and Murphy.
In any event, if the defendant had any doubt, he could have clarified the
point during any one of the five later times when Green or Murphy was re-
called to the stand.

the preliminary hearing and at the trial supported the Commonwealth's position that the police officers did not touch or open either the suitcase or the filing cabinet. Whatever the officers were able to see in either container was the result of Roy's voluntary act. The act was incidental to a reasonable and brief on-the-street inquiry by alert police officers. No arrest had then taken place. See *Commonwealth* v. *Lehan,* 347 Mass. 197, 204–206, and authorities cited and discussed. The revelation of the contents of the suitcase and filing cabinet justified continued questioning by the officers.

The episode in its entirety, viewed in the light of the responses by Lamm and Roy before and after the opening of the suitcase and the filing case and of the police awareness of the fact of numerous recent house breaks in the vicinity, presented to the officers the choice between detention for the purpose of further investigation, or release on the spot which doubtless would finally and conclusively eliminate them from the case. The course pursued was sensible, reasonable and dutiful. See *Commonwealth* v. *Lawton,* 348 Mass. 129. The evidence shows that the officers suspected that Lamm and Roy had committed a felony. The facts and circumstances of which the officers were aware when the street interrogation was completed afforded, in our judgment, reasonable grounds or probable cause for their belief that the two men had committed a felony. *Commonwealth* v. *Phelps,* 209 Mass. 396, 404. The further detention of the men was therefore lawful. The fact that the officers did not then know or had not then been informed that a felony had in fact been committed is not determinative of the issue. *Commonwealth* v. *Carey,* 12 Cush. 246, 251. *Commonwealth* v. *Lehan,* 347 Mass. 197, 206. About 4:30 P.M. on September 17, 1964, Queeney reported the breaking and entering and larceny at his residence to the police.

There is no merit to Roy's contention that he was deprived of his right to counsel when he made his statements at the police station, and that his statements were inadmis-

sible under the Sixth and Fourteenth Amendments to the Constitution of the United States. Roy spurned the opportunity to have counsel. He chose to rely upon his own experience in dealing with the police. He cannot now be heard to complain that his admission of the Queeney break at the confrontation with Lamm was not admissible because he was without counsel when he made it. Moreover, his reference to being a "Sing Sing graduate" was testified to at least twice and at no time was there an objection, an exception, a motion to strike, or a request for an instruction with respect to it. "It is settled that in trials held in accordance with . . . G. L. (Ter. Ed.), c. 278, §§ 33A–33G, inclusive, as amended, there can be no valid assignment of error respecting a matter as to which exception might have been saved at the trial, unless there has first been such exception." *Commonwealth* v. *Gray,* 314 Mass. 96, 102, and cases cited. (Assignment 8.)

Roy's admission of his participation in the break into and larceny from the Queeney household made admissible against him the several items of property which were identified by Queeney as having been stolen from the dwelling on that day and found in either his or Lamm's possession. (Assignments 3, 4, 5, 6.) It likewise made admissible against him the screw driver which, as narrated by Lamm to the police in Roy's presence, had been purchased, taped and used by both to gain entrance to the Queeney dwelling and then purposely left there. (Assignment 9.)

We do not feel called upon to determine, as the defendant Roy asks, the precise moment when his arrest may be said to have taken place. No right of his turns upon that determination. The significant facts show that there was no invasion of his constitutional rights during the on-the-street inquiry and that there was no infringement of them from the moment he accompanied the police to the station. Cf. *Escobedo* v. *Illinois,* 378 U. S. 478. Accordingly, without any intimation of error, we consider assignments 1 and 7, apparently directed to the issue of the time of arrest, as immaterial to our holding that there was no error in the

Commonwealth *v.* Roy.

denial of Roy's motions for directed verdicts on the indictment relating to the Queeney dwelling or on the indictment charging him with the possession of burglar's tools. (Assignments 13, 14 and 15.)

The defendant Roy was entitled, however, to a directed verdict on the indictment charging breaking and entering and larceny at the Clark dwelling in Brookline on August 29, 1964. We state briefly the reasons for this conclusion. Although Lamm's statements to the police at the station clearly implicated Roy in the Brookline crime, his statements, as the judge repeatedly and correctly instructed the jury, were not evidence against Roy. There was no competent evidence that Roy lived in the same room where Lamm stated they both lived, and where goods stolen from the Clark residence were found at 7 P.M. when the police accompanied Lamm to search the room. The statements made by Roy, in response to questions by the Brookline police are not, in our view, reasonably susceptible of any interpretation other than as an unequivocal denial of participation in the Brookline house breaks. See *Commonwealth v. Twombly,* 319 Mass. 464; *Commonwealth v. Grieco,* 323 Mass. 639. The motion for a directed verdict on indictment 38,527 should have been allowed.

It follows that as to indictments 38,432 and 38,434 the judgments are affirmed, and that as to indictment 38,527 the judgment is reversed.

*So ordered.*