(No. 41027.-)

HOWARD CLIFFORD ELSTON, Appellant, *vs.* MAX FRYE, Warden, Appellee.

*Opinion filed September 24, 1968.*

W. H. KASTEN, of Springfield, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, and RAYMOND L. TERRELL, State's Attorney, both of Springfield, (FRED G. LEACH, Assistant Attorney General, and RICHARD A. HOLLIS, First Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

On September 15, 1942, petitioner Howard Clifford Elston and two other defendants pleaded guilty in the Sangamon County circuit court to the charge of burglary and larceny, and after a finding of guilty Elston was sentenced to the Illinois State Penitentiary for a term of one year to life. In November, 1946, petitioner was released on parole. On February 19, 1948, he was found guilty of robbery with a gun by a petit jury in Sangamon County and sentenced to the penitentiary for the term of his natural life as an habitual criminal. In 1952 Elston filed a post-conviction petition in the Sangamon County circuit court alleging, among other things, violation of his right to counsel in his 1942 burglary conviction. That petition was denied, and this court denied a writ of error. On August 3, 1967, Elston again filed a post-conviction petition in the circuit court of Sangamon County alleging that at no time prior to his guilty plea in the 1942 burglary proceeding was he advised of his right to retain counsel or his right to be provided with free counsel if indigent. This was consolidated for hearing with a *habeas corpus* petition previously filed on June 29, 1967, containing substantially similar allegations. These petitions were denied after a full hearing on the merits, and he appeals that decision seeking to void his 1942 conviction by retroactive application of the principles enunciated in *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792. We, however, find it unnecessary to reach that question because the facts surrounding petitioner's guilty plea affirmatively show that he understandingly waived the right to be represented by retained counsel.

These 1942 proceedings substantially predate adoption of our Rule 401(b) (36 Ill.2d 167) requiring incorporation into the common-law record of a transcript of the court's inquiries and the answers of the accused at the time a plea of guilty is entered. The obvious purpose of that rule is to assist a reviewing court in determining whether a de-

fendant understood his constitutional rights. Since the rule was not in effect in 1942, we do not have a transcript of the questions and answers before us. The docket entries relating to Elston's arraignment, however, do show that he was "admonished by the court" before acceptance of his plea, and there is no evidence other than petitioner's testimony that the court's admonition did not include an explanation of the right to counsel. Nor is there any convincing showing that petitioner was indigent at the time of his arraignment. Evidence to the contrary appears from the fact that Elston's mother had twice hired counsel to represent him in criminal matters, and that Elston was regularly employed before his arrest.

At that time Elston was twenty years old with an eighth grade education; he had served in the merchant marine, and for six weeks prior to his arrest worked as a cab driver. In 1939 petitioner had been convicted of car theft upon his plea of guilty, and he served two years and four months of the one-to-ten-year sentence then imposed. In that proceeding petitioner was represented by an attorney retained by his mother. It is clear from petitioner's testimony at his post-conviction hearing that his mother had also hired an attorney named Scott to defend him on the 1942 burglary charge. However, petitioner testified that Attorney Scott suffered a heart attack on the morning of the day on which it appears petitioner was scheduled for arraignment, and the lawyer's secretary contacted defendant and his mother in the corridor outside of the courtroom to inquire whether they wished her to appear on Elston's behalf and ask for a continuance. The petitioner testified: "My mother didn't know nothing about it and I told them, well, forget it." "Whether a waiver [of counsel] was made must be determined by the particular facts and circumstances of the case, including a consideration of the background, experience and conduct of the accused." (*Vertz* v. *Sacks,* 173 Ohio St. 459, 183 N.E.2d 924, 925; *In re Burson,* 152 Ohio St. 375,

89 N.E.2d 651, 655.) We believe that the facts in this case establish that petitioner understandingly waived the right to counsel when he refused to seek a continuance because of the illness of his attorney. We consider it relevant in this regard that petitioner "was no stranger to criminal proceedings" (*People* v. *Motis,* 23 Ill.2d 556, 559); having been represented by retained counsel in a prior criminal prosecution, he cannot be considered unaware of the need and importance of such representation. This case is not one in which the record is silent on the question of waiver, for by Elston's own admission he spurned the opportunity to have retained counsel, and having done so he cannot now be heard to complain that he suffered an unconstitutional conviction because he was unrepresented when he pleaded guilty. See *Commonwealth* v. *Roy,* 349 Mass. 224, 207 N.E.2d 284, 288.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*