COMMONWEALTH *vs.* LAWRENCE LANOUE & another.

Norfolk.   October 6, 1969. — October 29, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Search and Seizure.   Arrest.   Constitutional Law,* Search and seizure.

A defendant indicted for possession of burglarious tools had standing to move on constitutional grounds to suppress as evidence articles seized without a search warrant in an automobile while the defendant was an occupant therein, although the automobile was owned by another. [340]

Following information related by a reliable and disinterested person to a police officer regarding suspicious conduct observed of the occupants of an automobile, and a call to a police officer in a cruiser who was told to be "on the lookout" for that automobile and was informed that its occupants were "believed to have been involved" in criminal activity and to "have a safe" in their automobile, the officer in the cruiser had probable cause to stop the automobile, and the immediate detention of its occupants was lawful. [340–341]

At the joint trial of the operator and an occupant of an automobile upon indictments for possession of burglarious tools, evidence that after a police officer had stopped the automobile and arrested the operator, he, upon the urging of the other defendant and another occupant of the automobile, agreed to allow the officer to search its trunk, warranted a conclusion that the defendants consented to the search of the trunk then made, during which the officer observed its contents; without materiality was a search of the automobile made at a police station the following day, and there was no error in admitting in evidence articles observed in the initial search, although at no time was a search warrant obtained. [341]

Two INDICTMENTS found and returned in the Superior Court on June 7, 1968.

Motions to suppress were denied by *Beaudreau*, J., and the cases were heard by him.

*Thomas H. Heaton, III*, for the defendants.

*A. Russell Lucid, Jr.*, Special Assistant Attorney General, for the Commonwealth.

SPIEGEL, J. The defendants were tried on indictments charging each with possession of burglarious tools. G. L. c. 266, § 49. The judge, in a jury waived trial, found them guilty. The cases are here by appeals under the provisions of G. L. c. 278, §§ 33A–33G.

Although each of the defendants filed nine assignments of error, they each have waived six of them. The remaining assignments relate to the trial judge's refusal to suppress certain evidence regarding items allegedly seized in violation of the defendants' constitutional rights.

We summarize pertinent portions of the evidence. On March 6, 1968, between the hours of 9 and 10 A.M., one Alexander Mackowski was proceeding along Allenwood Road, an outlying wooded area in Uxbridge, when he came upon a parked automobile obstructing his path. As he approached the stationary vehicle he slowed his car virtually to a stop. Mackowski observed two men dash from nearby woods and a third man hiding behind the stone wall which lay between the road and the woods. The two men got into the car and removed it from Mackowski's path before he came to a complete stop. The unusual behavior of the men aroused Mackowski's suspicion; he continued along the road, periodically observing the other car. He noticed it pull out and proceed along the road behind him. Approximately half a mile down the road Mackowski pulled off and as the other car went past, he noted that it was a Chevrolet and bore Rhode Island license plates numbered DK842. Mackowski then returned to the spot from which he had seen the men dash and observed a grey metal box and a sledge hammer.

Proceeding to the nearest pay telephone he reported his observations to Sergeant Charles McQuade of the Uxbridge police, who checked the car's registration with the Rhode

Island Registry of Motor Vehicles. McQuade was informed that a car bearing the registration DK842 was owned by one Guy Lanoue of Woonsocket, Rhode Island.

At approximately 11 A.M. on March 6, 1968, Sergeant Geurand of the Bellingham police department called Officer Leo Gill, also of the Bellingham police, and told him to be "[o]n the lookout for a 1962 Chevrolet, Rhode Island registration DK842 . . . [with] three occupants in the car." Officer Gill was also told that Sergeant Geurand received a call from the Woonsocket Police and the "[o]ccupants of the vehicle are believed to have been involved in a B. and E. and also they have a safe in the car."

Officer Gill subsequently observed the described vehicle heading south on South Main Street, Bellingham, and stopped it. As soon as he did so, another cruiser with Officer Stevens arrived on the scene and pulled up in front of the Lanoue vehicle. After requesting the licenses of the three occupants, Officer Gill informed by telephone Sergeant Geurand that the driver of the vehicle was Guy Rene Lanoue, whereupon the sergeant instructed Officer Gill to arrest Lanoue on the basis of an outstanding default warrant.

Immediately after arresting Guy, Officer Gill "asked him if he wouldn't mind if we [the officers] had a look in his trunk." Guy refused at first and Officer Gill told him that "he [Guy] didn't have to if he didn't want to." Then, after being urged by his brother Lawrence and one Roland LaForme, the other two occupants of the vehicle, Guy agreed to allow Officer Gill to search the trunk, stating: "Well, all right. I will open my trunk."

Accompanied by Officer Gill, Guy proceeded to the rear of the car and opened the trunk. When the trunk was opened, Officer Gill inspected its contents, observing a sledge hammer and a chisel, as well as a tool box, blanket and spare tire. The occupants of the vehicle voluntarily accompanied the officers to the police station and at approximately 1:15 P.M. were arrested for possession of burglarious tools. The car was towed to the police station where it was searched

on the following day, March 7, 1968. At no time was a search warrant obtained.

The Commonwealth contends that Lawrence "has no standing to object to the reasonableness of the search of an automobile owned by another." It bases this argument on the theory that "[t]he constitutional provisions raised by the defendant [Lawrence] may be invoked only by someone who has been aggrieved [and claims that] [i]n this case only the owner of the car may raise the issue of reasonableness." We do not agree. "This argument cannot prevail in the light of the decision of the United States Supreme Court in *Jones* v. *United States*, 362 U. S. 257, 267." *Commonwealth* v. *Dirring*, 354 Mass. 523, 531. *Simmons* v. *United States*, 390 U. S. 377, 390.

The defendants' contention that Officer Gill had no probable cause to stop the vehicle does not withstand an examination of the evidence. The defendants' suspicious conduct, and the report of that activity by Mackowski, gave the police "'reason to suspect' the questioned person of 'unlawful design,' that is, that the person . . . [had] committed, . . . [was] committing, or . . . [was] about to commit a crime." *Commonwealth* v. *Lehan*, 347 Mass. 197, 204. Information regarding a defendant's suspicious conduct, which is related by a reliable and disinterested informant, has been held sufficient to establish probable cause, irrespective of personal observation of such activity by the police. *Commonwealth* v. *Lehan*, *supra*, 206. *Jones* v. *United States*, *supra*, 267–272. Moreover, it is unnecessary for the detaining officer to know all the information pertaining to the incident or, in fact, that he know of the specific crime involved. *Commonwealth* v. *Carey*, 12 Cush. 246, 251. *Commonwealth* v. *Lehan*, *supra*, 206. *Commonwealth* v. *Roy*, 349 Mass. 224, 230. Furthermore, "[t]he knowledge of one . . . [is] the knowledge of all." *Commonwealth* v. *McDermott*, 347 Mass. 246, 249. The evidence was sufficient for the judge to conclude that Officer Gill had probable cause to stop the car. See *Commonwealth* v. *Rossetti*, 349 Mass. 626; *Brinegar* v. *United States*, 338 U. S. 160. The

further detention of the men was therefore lawful. *Commonwealth* v. *Roy, supra,* 230.

However, we need not here be concerned with whether the search was incident to a lawful arrest. There was ample evidence to warrant the judge in concluding that the defendants consented to the initial search of the automobile. *Commonwealth* v. *Roy, supra,* 229–230. *Commonwealth* v. *Garreffi,* 355 Mass. 428, 431. *Armwood* v. *Pepersack,* 244 F. Supp. 469, 473–474. Having consented to the search the defendants cannot object to the items discovered as a result of that search.

Finally, the defendants contend that the search of the car did not take place until the day following the arrest. This contention overlooks the fact that Officer Gill searched the car with Guy's consent on March 6, 1968. The actual search of the car was effected at the time and place of the initial detention, at which time the officer observed its contents, thereby presenting no problem of the remoteness of the search. See *Commonwealth* v. *Blackburn,* 354 Mass. 200, 202. See also *Preston* v. *United States,* 376 U. S. 364; *Cooper* v. *California,* 386 U. S. 58. There was no error.

*Judgments affirmed.*