COMMONWEALTH *vs.* PAUL B. WILSON.

Middlesex. November 1, 1971. — December 7, 1971.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Threshold Police Inquiry. Arrest. Search and Seizure. Identification. Evidence*, Admissions and confessions. *Practice, Criminal*, Suspension of trial.

G. L. c. 41, § 98, as amended through St. 1967, c. 368, § 2, constitutionally permits a police officer to stop a car in order to conduct a brief threshold inquiry when he has "reason to suspect" that the questioned person has committed, is committing, or is about to commit a crime. |559-560|

Where a police officer received information that one in a described car was acting suspiciously and shortly thereafter saw a car matching the description near the scene of earlier robberies, the officer had probable cause to stop the car. |558-560|

Temporary seizure by police of a toy gun located in plain view on the floor of a car after it had been justifiably stopped by the police was an appropriate step in an ensuing questioning of the operator of the car and was not unlawful. |560|

Where, at the trial of indictments charging the defendant with two robberies, a motion to suppress identifications of him as the robber by two eyewitnesses of the robberies in confrontations at a police station before trial was allowed, the burden was on the Commonwealth to establish by clear and convincing evidence that in-court identifications by the eyewitnesses were based upon observations other than the confrontations at the police station |561|; a conclusion that the Commonwealth had sustained that burden was warranted where there was evidence that the two eyewitnesses had ample opportunity to observe the robber at close quarters in good lighting and that each gave an accurate description of him to police, and both testified that they could identify the defendant as the robber without the benefit of the prior confrontations |561-563|.

Denial of a motion in a criminal case to suppress incriminating oral and written statements by the defendant was justified where it was apparent that a contention by the defendant that the statements were made after continued interrogation during which he requested counsel was rejected by both the judge and the jury after the judge had instructed the jury that if they were not satisfied beyond a reasonable doubt that the statements were made voluntarily without inducement by fear or intimidation they could not use the statements against the defendant in determining guilt. |563-564|

In the circumstances, the judge at a criminal trial did not abuse his

discretion in refusing to interrupt the trial in order to permit a search for previous testimony of a police officer which might have been inconsistent with subsequent testimony by him where the previous testimony had not yet been transcribed by the court stenographer, the defendant was permitted to examine the officer concerning the alleged prior inconsistent testimony, and his lack of memory respecting it was fully disclosed. |564-565|

INDICTMENTS found and returned in the Superior Court on September 15, 1970.

The cases were tried before *Roy, J.*

*Reuben Goodman* for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.   The defendant appeals under G. L. c. 278, §§ 33A–33G, from convictions of unarmed robbery on each of two indictments charging armed robbery.   He assigns as error (1) denial of his motion to suppress, as the fruits of an unlawful search, a toy gun and his statements to the police, (2) in-court identifications tainted by impermissibly suggestive procedures, (3) admission in evidence of incriminating statements made by him after he had requested counsel, and (4) denial of his request that the stenographer read back prior inconsistent testimony of a police officer.

A cashier at the Village Food store on Massachusetts Avenue in Lexington testified to a robbery with a gun about 9:45 P.M. on Tuesday, August 18, 1970, and identified the defendant as the robber.   A part time employee at the Cumberland Farms store, about a block from the Village Food store, testified to a robbery with a plastic water pistol about 6:30 P.M. on Saturday, August 22, 1970, and identified the defendant as the robber.   The defendant testified that he was elsewhere on both occasions, and other witnesses partially corroborated his testimony.

1. *The arrest.*   Three police officers testified at the hearing on the motion to suppress, and the judge made extensive findings of fact.   We summarize those relating to the arrest of the defendant.   After the Tuesday robbery a hat and a water pistol resembling a hand gun were found near the

scene. Shortly before 10:30 P.M. on Sunday, August 23. 1970, an officer in a cruiser car received information by radio that a person in a light-colored station wagon was acting suspiciously and apparently changing clothing. About 10:30 P.M. the officer saw a car matching the description near the scene of the robberies. He stopped the car and checked the license and registration of the operator, who was the defendant.

A second officer arrived in response to a radio call and secured permission to sit in the defendant's car and talk to him. Through the open door on the driver's side the first officer observed a second water pistol on the floor of the station wagon between the defendant's legs. The officer asked the defendant to step out of the car and picked up the gun. The defendant first said he didn't know how the gun happened to be in his automobile, and then said it probably belonged to a nephew of his. The defendant then agreed to go to the police station for further talk about the gun.

At that time the defendant was not under arrest. He and the two officers arrived at the police station about 11:15 P.M. or 11:30 P.M. The second officer took the defendant to his office, handed him a "Miranda Warning Card," and asked him whether he understood it. The defendant said he did, and his implication in the two robberies was discussed. The defendant was asked whether he wanted to speak to an attorney, and was given an opportunity to use the telephone. It is not clear whether he did so. He was booked about 12:15 A.M. on suspicion of armed robbery and placed in a cell.

The defendant argues that the gun and the oral and written statements made at the police station were the fruit of the illegal interception of the defendant's automobile without probable cause and that they should have been suppressed. But G. L. c. 41, § 98, as amended through St. 1967, c. 368, § 2, constitutionally permits a brief threshold inquiry where suspicious conduct gives the officer "reason to suspect" the questioned person of "unlawful design," that is, that the person has committed, is com-

mitting, or is about to commit a crime. *Commonwealth* v. *Lehan*, 347 Mass. 197, 204. *Commonwealth* v. *Lawton*, 348 Mass. 129, 132. *Commonwealth* v. *Roy*, 349 Mass. 224, 230. *Alegata* v. *Commonwealth*, 353 Mass. 287, 293. *Commonwealth* v. *Matthews*, 355 Mass. 378, 380. *Commonwealth* v. *Quish*, 356 Mass. 718. *Terry* v. *Ohio*, 392 U. S. 1, 22. See concurring opinions of White, J., in *Terry* v. *Ohio*, 392 U. S. 1, 34, and *Sibron* v. *New York*, 392 U. S. 40, 69; LaFave, "Street Encounters" and the Constitution: *Terry*, *Sibron*, *Peters*, and Beyond, 67 Mich L. Rev. 40, 62-84; Search and Seizure — A Symposium, 54 Mass. L. Q. 203, 223-226. We have upheld the stopping of a car in order to conduct such an inquiry. *Commonwealth* v. *Dottin*, 353 Mass. 439, 442. *Commonwealth* v. *Lanoue*, 356 Mass. 337, 340.

Upon the facts found by the judge, we think the officer had probable cause to stop the defendant's car. Once the car was stopped it was not unlawful to see the toy gun, which was in plain view. *Commonwealth* v. *LaBossiere*, 347 Mass. 384, 386. *Commonwealth* v. *Campbell*, 352 Mass. 387, 402. *Commonwealth* v. *Murphy*, 353 Mass. 433, 438. *Commonwealth* v. *Colella, ante,* 144, 149-150. Search and Seizure — A Symposium, 54 Mass. L. Q. 203, 211. Its temporary seizure was an appropriate step in the continuing inquiry, and the defendant's incredible answers to questions about the gun justified further inquiry. Cf. *Commonwealth* v. *Dottin, supra; Commonwealth* v. *Quish*, 356 Mass. 718. What was done from then until the defendant was booked was done with the defendant's consent. *Commonwealth* v. *Slaney*, 350 Mass. 400, 406. *Commonwealth* v. *Garreffi*, 355 Mass. 428, 431. *Commonwealth* v. *Lanoue*, 356 Mass. 337, 341.

These conclusions are reinforced by testimony of the police officers not repeated in the judge's findings. The officer in the cruiser knew the informant as a woman who lived across the street from where the defendant's car was parked, near the scene of the two robberies. He talked to her before he saw the defendant's car. When he first saw the car, the defendant was driving it on Massachusetts

Avenue in Lexington; it swung into a gasoline station, turned around without stopping, and started down the avenue in the opposite direction. The defendant matched the rather general description of the robber which had been given to the officer. When asked what he was doing in the area, he said he was just riding around. There was a mattress in the back of the car, and the defendant said he had been living in the car for quite some time. The two guns were identical. Cf. *Commonwealth* v. *Breen*, 357 Mass. 441, 446; *Commonwealth* v. *Cass*, 358 Mass. 805; *Commonwealth* v. *Jackson*, 359 Mass. 759; *Chambers* v. *Maroney*, 399 U. S. 42, 46–47.

2. *The identifications.* Both the cashier who testified to the first robbery and the part time employee who testified to the second robbery had identified the defendant at the police station in circumstances which led the judge to suppress those identifications. As the defendant contends, therefore, the burden was on the Commonwealth "to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than" the confrontations in the police station. *United States* v. *Wade*, 388 U. S. 218, 240. *Cooper* v. *Picard*, 316 F. Supp. 856, 860 (D. Mass.), *S. C.* 428 F. 2d 1351, 1354 (1st Cir.), states that the factors listed in the *Wade* case (p. 241) "*must* be considered": "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." In addition the facts surrounding the police station confrontations must be developed to determine "the suggestiveness of the tainted confrontation[s]."

In the present case there was no lineup, no discrepancy between any pre-confrontation description and the defendant's actual description, no identification of any person

other than the defendant, no identification by picture, and no failure to identify the defendant. Each of the two identifying witnesses had ample opportunity to observe the robber at close quarters in good lighting. Cf. *Commonwealth* v. *Kazonis,* 356 Mass. 649, 652; *Cooper* v. *Picard,* 316 F. Supp. 856, 863 (D. Mass.). Each did in fact observe the commission of the robbery. Each gave an accurate though somewhat general description to the police shortly after the robbery. Cf. *Commonwealth* v. *Cefalo,* 357 Mass. 255, 257–258.

The confrontations in the police station took place five days after the first robbery and one day after the second. They were highly suggestive. The cashier of the Village Food store testified that the police called her up and said "they had somebody up there and they would like me to come up and identify him." She went to the police station; an officer told her they were going to bring somebody out and "he wanted me to identify him, to see if I knew him or not. If he was the one that held up the Village Food Store. . . . So while I was talking to him they did bring out this fellow. As soon as I seen him, I recognized him." The part time employee of the Cumberland Farms store said the police left a message for him to come down and make an identification. When he walked into the police station, an officer said "that he had a man that he wanted me to look at. He said he was going to have him brought up. He came up the stairs and came through the set of doors, and I was standing there and he asked me if that was the man. I said I couldn't positively identify him because he was in different clothing, and I said his facial [characteristics were the same as the man that held me up]." Both witnesses also saw the defendant at a probable cause hearing in the District Court.

Each witness was asked whether, without the benefit of the prior confrontations, the witness could identify the defendant as the robber, and each gave an affirmative answer. Largely on the basis of those answers, the judge refused to suppress the in-court identifications. Cf. *Cooper* v. *Picard,*

316 F. Supp. 856, 861 (D. Mass.). We think he was warranted in concluding that the Commonwealth had carried its burden by clear and convincing evidence.

3. *The confession.* At the hearing on the motion to suppress, the second of the two officers who took the defendant to the police station was asked, "Well, when you decided to book him, did he then say he wanted to speak to an attorney?" The officer answered, "I think he did. . . . I believe he did. I can't say for sure." This testimony was not referred to in the judge's findings. The defendant asked the judge to include in his findings that the defendant had requested counsel prior to being booked. The judge refused, and noted the defendant's exception.

Thereafter the defendant made oral statements and wrote out a statement in his own handwriting admitting the two robberies, and signed with two police witnesses. The judge refused to suppress the statements, and they were admitted in evidence. We summarize the judge's findings with respect to the statements. Between 1:00 and 1:15 A.M., approximately an hour after the defendant was booked, a third police officer came to the police station in response to a telephone call. After some discussion with the other officers, he went to the defendant's cell and read a "Miranda Warning Card" to him. When asked, "[D]o you wish to talk to me now?" the defendant did not request a lawyer but answered, "What's in it for me?" The officer replied, "There is nothing in it for you, but if you level with me, I will level with you and tell you what we have." The officer described the situation to the defendant, and after some further conversation the defendant made oral statements and wrote out and signed the written statement. The written statement includes these words: "Time, 3:08 a.m.; Date, 8-24-70; place, Lexington."

The judge found that "that statement was voluntarily made by the Defendant; that no threats, coercion, or promises were made to him; that it was made after he had been informed adequately of his legal rights." The defendant did not testify at the voir dire examination, but

subsequently he testified that he twice asked to see a lawyer before the written statement was made, that the third police officer grabbed him by the collar and struck him in the chest, and that he gave a statement to the officer "right after he struck me." The judge thereafter instructed the jury that if they were not satisfied beyond a reasonable doubt that the defendant's written statement and oral statements were made voluntarily, if he was intimidated or induced by fear, they could not use the statement against him in determining his guilt.

The defendant's principal contention with respect to his oral and written confessions is that they were made after continued interrogation during which he asked for counsel. Confessions made in such circumstances could not be admitted in evidence. *Commonwealth* v. *McKenna*, 355 Mass. 313, 323–325. *Commonwealth* v. *Murray*, 359 Mass. 541, 545–546. *Miranda* v. *Arizona*, 384 U. S. 436, 474. But the contention fails on the facts obviously found first by the judge and then by the jury. It is quite clear that the judge refused to make a finding based on the equivocal testimony of the second police officer with respect to a request to speak to an attorney. It must also be assumed that the jury rejected the defendant's account of the interrogation. Neither judge nor jury was bound to believe the testimony in question, and without it there is no basis for the defendant's contention.

4. *The prior inconsistent statement.* Before the jury the second police officer was asked whether, when the defendant was told he was going to be booked, he asked to speak to an attorney. The officer answered, "He didn't ask me to speak to an attorney period." He was then asked whether he remembered his earlier testimony in the absence of the jury, and testified that he did not recall what his answer was to the question whether the defendant had requested to speak to an attorney. The defendant then asked permission to have the stenographer read the prior question and answer to the witness. The testimony on voir dire examination, given on a previous day, had apparently not been tran-

scribed. The judge said, "It will take him an hour to look for it," and refused to suspend the trial to permit the stenographer to search his notes. The defendant excepted, and now claims error on the crucial issue "whether the confession should be disregarded by the jury as involuntary."

The officer's equivocal testimony on voir dire is quoted earlier in this opinion: "I think he did. . . . I believe he did. I can't say for sure." In context, it may well have reflected uncertainty as to what he had been told by other officers. It related, not to the facts of the crime, but to a preliminary question of fact bearing on the admissibility of other evidence. See *Robinson* v. *Old Colony St. Ry.* 189 Mass. 594, 596. The judge simply refused to suspend the trial to permit a search for evidence. The defendant was permitted to examine the officer concerning the alleged prior inconsistent statement, and the officer's lack of memory was fully disclosed. The prior testimony was not secret, like that in *Commonwealth* v. *Carita*, 356 Mass. 132, 141–142, cited by the defendant; it could have been offered through any of those who were present and heard it. The defendant did not offer the evidence in any of the several ways available to him. In the circumstances, the judge did not abuse his discretion in refusing to interrupt the trial.

*Judgments affirmed.*