STATE OF MAINE
*vs.*
DUANE S. LITTLEFIELD

STATE OF MAINE
*vs.*
LAWRENCE A. SINCLAIR

Cumberland. Opinion, October 13, 1965.

*William K. Tyler, Asst. County Atty.,*
*Earl J. Wahl, County Atty.,* for the State.

*Ronald L. Kellam,* for Respondent Littlefield.
*Joseph E. Brennan,* for Respondent Sinclair.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, MARDEN, RUDMAN, JJ. SULLIVAN, J., sat at argument but retired before the opinion was adopted.

RUDMAN, J. By separate indictments each respondent was accused of breaking, entering and larceny in the nighttime. The same criminal incident was detailed in each accusation and the respondents were jointly tried by jury. Verdicts of guilty were returned.

The respondents here prosecute their exceptions to the admission of evidence and to the refusal of the presiding justice to direct verdicts of not guilty. Respondents appeal from the denial of their motions for new trials.

Briefly the facts are: In the early morning hours of July 2, 1964, a State Trooper learned that a laundromat located in Casco had been broken into. In the course of his investigation, he found where the entrance to the building had been made. The lock on the entrance door had been removed. Missing from the premises were a claw hammer, a packet of Allen wrenches and some bottled beverages. The investigation made by the State Trooper disclosed that the laundromat had been broken into and an attempt made to take the coin changers. In the rear of the laundromat there was a storeroom which had a door leading to it from the rear; the door had a hasp and locked with a padlock. There was evidence that the door had been jimmied and the lock was missing. In the front part of the laundromat there were two coin changers with jimmy marks between the coin changers and the wall, also smudged greasy palm and fingerprints on the walls.

The Trooper saw the respondents in the general area of Casco and Naples practically every day for a period of two or three weeks prior to the break at the laundromat. On July 1st about 11:00 p.m. he met a car owned by Littlefield at the junction of Route 11 and 302 in Naples. He, at the

time, did not know who was in the car. Later the respondents admitted they were in the car.

In the afternoon of July 3rd the Trooper met the respondents as they drove into the Naples Spa. There was grease all over the hood and trunk of the Littlefield car, as well as grease on the hands of the respondents. He inquired of both several times as to their whereabouts on the night of July 1st and the morning of July 2nd. He was given evasive answers to his questions.

The information which the officer had gathered of other breaks in the vicinity, the theft of a battery, similar to the battery offered for sale by the respondents, the theft of a case of bottles which Sinclair admitted taking, the greasy palm and fingerprints on the walls of the laundromat and the grease on the hands of the respondents, satisfied him that there was sufficient reasonable cause for the arrest of the respondents. He then placed them under arrest and they were taken to the Bridgton Police Department. Littlefield rode with the officer and Sinclair followed driving Littlefield's car.

In the absence of the jury the Trooper was interrogated as to his basis for determining the probable cause for the arrest without first obtaining a warrant. His testimony was:

"BY Mr. CASEY:

Q When you approached Sinclair and Littlefield on July 3, 1964, did you have something specific in mind you wished to talk to them about?

A Yes, I did.

Q What was that in regard to?

A The break at the Fickett's Coin Laundry.

Q After talking with him for a period of time, as I understand it, did you place them under arrest?

A    I did.

BY THE COURT:

Q    Mr. Officer, at that point, what information did you have that caused you to conclude you should talk with these two respondents about this particular crime? You have described what you saw in the laundermat; you have described what Mr. Fickett said to you. Did you have any other information?

A    Yes, I did.

Q    What was it?

A    It is several things and I combined them all into what I felt were reasonable grounds.

Q    Tell us what they were?

A    . . . Friday morning I received information that Sinclair and Littlefield tried to sell a battery at a gas station in Naples. The battery was described to me and was the same type and voltage as one stolen two nights previous. While investigating the theft of that battery two days previous, I made sketches of tire marks left at the scene, measured the width and the tread design. Also at that time I was taking into consideration the night I saw them, that Wednesday night at 11 P.M. When I saw the car at 5 P.M. on July 3rd, the tires on the Littlefield vehicle, with the exception of one of them, matched as near perfect as I could describe it. The reason the fourth one didn't match was because it was changed. There was grease all over the hood and trunk of the Littlefield vehicle as well as grease on Littlefield's and Sinclair's hands. Bearing in mind the grease that was left on the coin changers and walls in Fickett's laundry, taking everything into consideration, the tire treads matching, the grease, the fact they tried to sell a battery which was practically identical to what had been stolen, and also

> Sinclair admitting to me taking a case of empty soda bottles, combining these several factors, it was then I felt I had reasonable grounds to arrest both of them for breaking into the laundermat.

Q   I am not asking you for any names, but your informant concerning the battery, whether or not it was a person who was in business?

A   Yes.

Q   Was the person known to you?

A   Yes.

Q   Was it a person in whose integrity you had some confidence?

A   Yes, I did."

The presiding justice, following the preliminary hearing, ruled that there was reasonable grounds for the officer to make the arrest without a warrant.

While probable cause must be based on more than mere suspicion, *Henry* v. *United States*, 361 U. S. 98, 4 L. ed. (2nd) 134, 139, 80 S. Ct. 168, it does not require proof sufficient to establish guilt. *Draper* v. *United States*, 358 U. S. 307, 312, 3 L. ed. 327, 331, 79 S. Ct. 329.

The essence of probable cause is reasonable ground for belief of guilt.

Mr. Justice Frankfurter speaking for the court in *Jones* v. *United States*, 362 U. S. 257, 270, 4 L. ed. 697, 707, 80 S. Ct. 725, said:

> "We rejected the contention that an officer may act without a warrant only when his basis for acting would be competent evidence upon a trial to prove defendant's guilt. Quoting from Brinegar v. United States, 338 US 160, 172, 93 L ed 1879, 1889, 69 S Ct 1302, we said that such a contention 'goes much too far in confusing and disregarding the difference between what is required to prove

> guilt in a criminal case and what is required to show probable cause for arrest or search . . . . . There is a large difference between the two things to be proved (guilt and probable cause) . . . . . and therefore a like difference in the quanta and modes of proof required to establish them.' "

Upon arriving at the police station both respondents were left in the custody of Deputy Sheriff Cadman. Trooper Hansen inquired of the respondents: " . . . . . If he minded if I look around. Both were willing or he was willing to let me look around the car." They said: "Go ahead and look." The search of the automobile yielded a hammer of the same description as the one missing from the laundromat. Sinclair, in the absence of Littlefield, when shown the hammer said: "All right. That is the hammer, I was there, we went in." Later Littlefield stated to the Trooper: "I am sorry I gave you a rough time. What Sinclair says is true. We broke into that Laundermat."

The search of the automobile was not an invasion of Sinclair's constitutional immunity to unreasonable search or seizure as he was not the owner nor in possession of the automobile. Littlefield's admissions were not made until he was informed by Sinclair of the admissions that he had made in Littlefield's absence.

We find the following in 79 C. J. S., page 810:

> "Since the immunity to unreasonable searches and seizures is a privilege personal to those whose rights thereunder have been infringed, they alone may invoke it against illegal searches and seizures. Thus one cannot complain of an illegal search and seizure of premises or property which he does not own, or lease, or of premises or property which he does not control, or lawfully, occupy, or rightfully possess, or in which he has no interest or makes no claims. It follows, therefor, that one may not object to an illegal or

unreasonable search of the property, premises, or possessions of another, if his own privacy is not unlawfully invaded."

" . . . . . a third party is not entitled to invoke the protection of the Fourth Amendment brings our decisions in line with the overwhelming weight of authority." *Zimmermann* v. *Wilson,* 105 Fed. (2nd) 583, 586. (3d Cir.)

In *Edwards* v. *State,* 228 P. (2nd) 672, 676 (Okl.) the court said:

"This court has repeatedly held that the constitution provision guaranteeing immunity from unlawful search and seizure is personal to the occupant of the place or premises searched and cannot be availed of by one not the owner or in possession of the premises involved." See *Wilson* v. *United States,* 218 F. (2nd) 754, 756 (10th Cir.); also *State* v. *MacKenzie,* 210 A. (2nd) 24 (Me.).

The testimony of the officer clearly supports consent by respondents to the search of the automobile which was neither refuted nor denied. The respondents chose to exercise their constitutional prerogative not to testify, neither was there any testimony offered by respondents in defense, nor contradictory to the testimony of the officer.

The search of the automobile in this case is distinguishable from that made in *Preston* v. *United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. 777 (cited by the respondents), where the automobile was searched without a warrant after it had been impounded in a garage where no one would be permitted to examine or move the automobile without the permission of the officers. Here we have an automobile which was parked on or near a highway. The respondents under arrest could not have moved the vehicle until and unless they were discharged on bail. Meanwhile, however, others may have had keys to the ignition switch,

or with or without keys could have removed articles from the automobile.

> "The guaranty of freedom from unreasonable searches and seizures is construed as recognizing a necessary difference between a search of a dwelling house or other structure in respect of which a search warrant may readily be obtained and a search of a ship, motorboat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 47 Am. Jur. 513, Sec. 18.

> See *Carroll* v. *United States,* 267 U. S. 132, 154, 69 L. ed. 543, 551, 45 S. Ct. 280.
>
> *Husty* v. *United States,* 282 U. S. 694, 701, 75 L. ed. 629, 632, 51 S. Ct. 240.

In *State* v. *Hanna,* 191 A. (2nd) 124, 131 (Conn.) the court said:

> "Since the decision in Mapp v. Ohio, . . . . . evidence obtained by an unreasonable search and seizure is inadmissible. State v. Fahy, 183 A. 2nd 261 (Conn.); State v. DelVecchio, 182 A. 2d 402 (Conn.); U. S. Const. amend. IV, XIV . . . . . But if one consents to a search of his person, possessions, or living quarters, he waives his constitutional protection and the evidence so obtained is admissible. State v. Griswold, 34 A. 1046 (Conn.). Although it is presumed, until the contrary is indicated, that a police officer has acted lawfully; State v. Reynolds, 101 Conn. 224, 231, 125 A. 636; this does not raise a concomitant presumption of consent to a search and seizure. When consent is claimed by the state to have rendered lawful an otherwise illegal search and seizure, the burden is on the state affirmatively to establish the consent. Villano v. United States, 310 F. 2d 680, 684 (10th Cir.); United States v. Smith, 308 F. 2d 657, 663 (2d Cir.)."

It cannot be said that the respondents were coerced or forced into making the admissions. The hammer was found in the automobile owned by Littlefield and he was not present when the officer confronted Sinclair with the hammer. The admissions by Sinclair were entirely voluntary and not obtained by force, threat or coercion. The admission by Littlefield of his participation in the crime was voluntarily made after he learned that Sinclair had admitted his own guilt. This is not a case where the facts concerning the circumstances surrounding the admissions are disputed. Here the facts are undisputed.

The search of the automobile was lawfully made with the consent of the respondents.

The entry will be,

*Exceptions overruled.*

*Appeals dismissed.*

*Motions for new trial denied.*

*Judgment for the State.*