**UNITED STATES of America,
Appellee,**

v.

**Charles TOLIVER, Appellant.**

**No. 25916.**

United States Court of Appeals,
Ninth Circuit.

Oct. 28, 1970.

Sheldon Green (argued), of Green & Green, Phoenix, Ariz., for appellant.

Paul Sloan (argued), Asst. U. S. Atty., James L. Browning, U. S. Atty.,

Jerrold M. Ladar, Chief, Criminal Division, San Francisco, Cal., for appellee.

Before ELY, HUFSTEDLER and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The appellant, Charles Toliver, was found guilty following a jury trial in the district court on two counts of an indictment charging violations of 21 U.S.C. § 174 (Concealment and Transportation of Heroin). His trial was severed from that of his codefendant, Hillard Maxfill. This court's jurisdiction to review the conviction rests on 28 U.S.C. § 1291. We have reviewed the entire proceeding and affirm the judgment of the trial court.

On July 31, 1969, the Bureau of Narcotics and Dangerous Drugs in San Francisco received a tip from an unidentified caller that a transfer of heroin was to occur in approximately one-half hour at a certain location in Oakland. The informant gave the names and physical descriptions (including clothing) of the parties who would be involved, the cars they would be driving, and a description of a female companion that would be present. The voice of the informant was recognized by another agent as belonging to a person who had provided reliable information in the past.

Upon arriving at the specified location, federal and state agents were able to confirm by observation many of the essential facts contained in the tip given by the informant. Appellant, who was previously known to the narcotics agent in charge as a drug offender, finally arrived in a red sports car exactly as the informant had stated. After a short conversation, appellant and Maxfill departed in a 1967 Oldsmobile to another location in Oakland where Maxfill parked the car. Appellant was observed as he exited the car, walked to the intersection, turned the corner and proceeded to the trunk of a 1959 yellow Ford Thunderbird parked out of view of the Oldsmobile. There was room for another vehicle both in front of, alongside and behind the Thunderbird. The agents continued to observe as appellant opened the trunk of the Thunderbird, glanced around, and then removed a brown paper bag from amongst other brown paper bags. The bag had a distinctive V-shaped tear in the top.

Appellant returned with the paper bag to the Oldsmobile and he and Maxfill returned to their original meeting place. They got out of the car empty-handed and entered a nearby building. Shortly thereafter, Maxfill, accompanied by his female companion, came out of the building and drove off in the Oldsmobile followed by the narcotics agents.

At the toll gate on the San Francisco-Oakland Bay Bridge, the Oldsmobile pulled in behind a surveillance car and then came to a stop as the line of cars halted for the toll booth. The other surveillance car pulled in behind the Oldsmobile. Agent Krusko left the front surveillance car and approached the driver's side of the Oldsmobile, identified himself to Maxfill as a narcotics agent, and asked for identification. As Maxfill began to get out of the car, Krusko, an experienced narcotics agent, noticed in plain view in a litter basket on the transmission hump a plain brown paper bag with a knotted rubber contraceptive protruding out of it, and containing, apparently, some white powder.

Maxfill was formally placed under arrest and the brown paper bag was removed from the litter basket. The bag had the same distinctive V-shaped tear in the top as Krusko had observed with respect to the bag in appellant's possession earlier. The bag contained both heroin and cocaine. On the basis of this arrest, the discovery of heroin and cocaine, the events previously observed and the informer's tip, Krusko obtained a search warrant for the Thunderbird from which it was believed that the narcotics had been obtained originally.

Later that evening appellant was apprehended and a key fitting the trunk of the Thunderbird was recovered from his pants pocket. The next day the car was searched and additional quantities of heroin and cocaine were discovered. Ap-

pellant's motion to suppress the narcotics was denied after an evidentiary hearing as was his motion for reconsideration.

Appellant was indicted along with Hillard Maxfill in Count I for concealment and transportation of the heroin discovered at the San Francisco-Oakland Bay Bridge; appellant was named alone in the second count for concealment and transportation of the heroin discovered in the Thunderbird.

The government contends that appellant has no standing to challenge the seizure of the contrabrand at the bridge. It points out that appellant was not present at the time and has never claimed a possessory interest in, or control over, the Oldsmobile. Therefore under the teachings of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697 (1960), and the decision of this court in Diaz-Rosendo v. United States, 357 F.2d 124 (9th Cir.), cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L. Ed.2d 83 (1966), appellant has no position to object. We agree. The rule was stated in *Jones*, supra:

> "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *" 362 U.S. at 261, 80 S.Ct. at 731.

The rule in *Jones* was approved recently in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1968), where the Court emphasized that the exclusionary rule did not accord special standing to conspirators and co-defendants whose privacy was not invaded. 394 U.S. at 171–175, 89 S.Ct. 961.

Even assuming standing, however, appellant is not entitled to relief. Appellant contends that agent Krusko lacked probable cause to arrest Maxfill and seize the narcotics from his car at the toll plaza. The pattern of probable cause began to develop when the informant described to the agents the episode which was about to occur. He was identified as a reliable informer. His reliability was further established when the facts developed substantially as the informant said they would.[1]

The transaction which was unfolding was obviously devious, clandestine and suspicious. It thoroughly warranted the action of Krusko in following Maxfill to the bridge. Once there Maxfill unknowingly boxed himself in. He drove up behind one surveillance car already stopped at the toll line and gave Krusko an opportunity to get out and walk up to Maxfill, identify himself and ask for identification. Maxfill turned to get out of the car, Krusko then noticed what appeared to him, as an experienced narcotics agent, to be heroin in plain view inside the car. Probable cause for the arrest existed at this moment and Krusko proceeded to make it.[2]

Appellant questions the scope of the search of the Maxfill automobile. That question was decided against appellant, however, in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

He also argues the insufficiency of the affidavit in support of the warrant

---

1. Subsequent observations by surveillance can supply underlying circumstances and corroborate reliability and establish probable cause. United States v. Chin Dan Fook, 413 F.2d 1016 (2nd Cir. 1969), cert. denied, 397 U.S. 928, 90 S.Ct. 936, 25 L.Ed.2d 107 (1970).

2. Busby v. United States, 296 F.2d 328 (9th Cir. 1961), cert. denied, 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962).

It is argued that the arrest occurred when Maxfill stopped behind the lead surveillance car and the other surveillance car stopped behind appellant. This delay was primarily the result of the normal functioning of the toll line. In any event, the line which appellant selected was of his own choosing and did not involve a maneuvered detention of his automobile by the agents.

to search the yellow Thunderbird.[3] We have examined the affidavit in the light of appellant's cited authorities and find it sufficient. It not only outlined the details of the tip but the events which took place under the agents' eyes which corroborated the tip, and the subsequent recovery at the bridge of the paper bag with narcotics in it which was similar in appearance to the paper bag taken from the Thunderbird. We believe the affidavit sufficient and the warrant valid.

Other alleged errors such as the alleged misconduct of counsel, error in the admission of evidence and the sufficiency of the evidence have been considered. They do not support the contentions of the appellant.

The judgment is affirmed.

3. Reliance is placed upon Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).