**UNITED STATES of America**

v.

**Robert RICKUS and Dennis Nazarok.**

**Crim. No. 70–399.**

United States District Court,
E. D. Pennsylvania.

Jan. 10, 1972.

U. S. Atty. Louis C. Bechtle, Asst. U. S. Atty. John F. Penrose, for the Government.

Bernard L. Segal, of Segal, Appel & Natali, Philadelphia, Pa., for defendants.

## OPINION

JOHN MORGAN DAVIS, District Judge.

Presently before this Court are defendants' motions to suppress evidence in the above captioned action. Defendants are charged with the commission of an armed robbery upon the Davisville, Pennsylvania branch of the Federally insured Girard Bank. Two hours after the robbery was committed, they were arrested in Moorestown, New Jersey. The evidence sought to be suppressed was seized in two searches, one of the defendants' persons following their arrest, the other of the automobile in which they had allegedly been travelling. The search of defendants produced a series of dollar bills discovered to have been taken from the bank; the search of the automobile produced a sawed-off shot gun, cloth hoods, and gloves. A hearing having been held and briefs having been filed on these motions, they are ready for determination.

On June 19, 1970, Louis Kanicki and James Schwab two employees of the Gimbels Auto Center located in the Moorestown Mall, Moorestown, New Jersey, observed a blue Chevrolet convertible with two men in it pull up next to a car parked in the Mall lot. The driver reached out and appeared to be trying keys in the lock of the empty car beside him. Suspicious, the two employees got into their own cars to observe more closely the peregrinations of the blue Chevrolet. Schwab drove past the blue Chevrolet which had meanwhile moved beside another parked car, and observed the license numbers of both cars. At the same time, he observed the passen-

ger reach out from the blue Chevrolet and contact the door of the neighbor car with his hand, which was clutching a ring of keys. These observations of the two witnesses were transmitted to the police.

Officer Robertson, the officer who subsequently arrested the defendants, later arrived on the scene, keeping watch over the blue Chevrolet, which by that time had been parked and left vacant. Soon the defendants left the Mall building complex and approached the blue Chevrolet but turned and retraced their steps when they were approximately fifty yards short of it. Robertson stopped the defendants but after speaking with them did not detain them. His next move was to go to the auto center and confer with the two witnesses concerning the description of the men they had seen in the blue Chevrolet. This conversation led him to search for the two men with whom he had spoken earlier, and upon finding them asked them to accompany him. No formal arrest was made, however, until Schwab had been driven by the place where Robertson and the defendants were standing and Schwab had signalled his recognition of one of the men as having been in the blue Chevrolet. His signal was interpreted by the police as indicating recognition of both men. They were then placed under arrest.

Both men were immediately removed to the Moorestown Police Station where they were routinely searched and their belongings examined. Upon each defendant was found approximately $400.-00 in new currency which had sequential serial numbers. These numbers were duly recorded.

Meanwhile, Officer Robertson along with Detective Fullerton returned to the blue Chevrolet in the Parking lot. This car, it was noted first, carried a Pennsylvania license plate but a New Jersey sticker. Robertson then glanced down and noticed the barrel of a sawed off shot gun sticking out from underneath the right hand front seat. Fullerton meanwhile noticed a bag which he dis-covered contained 26 automobile keys, plus masks and gloves.

We shall proceed to consider defendant's contentions first as to the searches of their persons and then as to the search of the automobile.

## I.

Defendants contend first that they were illegally arrested and as a consequence, any evidence seized during the routine searches conducted pursuant to these arrests was obtained in violation of their Fourth and Fourteenth Amendment rights and must be suppressed.

 It is true that the validity of a search incident to an arrest depends upon the constitutional validity of the arrest itself. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). It is also true that evidence obtained as a result of an unconstitutional and unlawful arrest must be excluded from evidence. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). To test the validity of the arrest, we must turn to New Jersey Law since the defendants were arrested within the jurisdiction of the state of New Jersey by officers of a municipality within that state. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

Defendants' contention is premised upon their own factual determination that they were initially arrested only for allegedly tampering with an automobile, which under New Jersey law is classified as a disorderly person offense or petty offense. (2A N.J.S. 169–4). This determination assumes significance because New Jersey law, which follows here the Common Law tradition, allows warrantless arrests of persons suspected of petty offenses only if the offense is committed in the arresting police officer's presence. State v. Morse, 54 N.J. 32, 252 A.2d 723 (1969). As the arrest in the case at bar was warrantless; was made for an alleged petty offense; and was not committed in the arresting officer's presence, the defendants conclude that it was invalid, which in turn

would render the subsequent search invalid. We disagree with this conclusion because we do not begin with the same factual determination as do the defendants.

The information which was related by a reliable informant (N.T. 99) to Officer Robertson, one of the arresting officers, regarding the activities of the defendants, we believe presented probable cause for arrest based on the charge either of auto theft or attempted larceny of its contents or both. New Jersey law designated the theft of "any money, goods, chattels, or other personal property of another," as at least a misdemeanor and if the value of the property is over $200.00 as a high misdemeanor. 2A N.J.S. 119–2. Generally high misdemeanors carry a maximum penalty of seven years whereas plain misdemeanors carry a maximum penalty of three years. However, we need not determine the potential value of whatever the defendants were seeking because again under New Jersey law, warrantless arrests are allowed merely on the basis of probable cause on all crimes carrying sentences of at least one year. State v. Hand, 101 N.J.Super. 43, 242 A.2d 888 (1968); State v. Hutchins, 43 N.J. 85, 202 A.2d 678 (1964). It should be noted that an attempt to commit a high misdemeanor or a misdemeanor would also carry the same maximum penalties. 2A N.J.S. 85–5.

In deciding as we do that probable cause existed here for an arrest for at least a misdemeanor, we need not rely upon subsequent findings such as the formal charges brought against the defendants or their eventual disposition. Even had the Moorestown police not actually charged the defendants with anything more than tampering with an automobile, the arrest and subsequent search would remain valid so long as probable cause existed at the time of the arrest for more serious charges. State v. Zito, 54 N.J. 206, 254 A.2d 769 (1969). In Zito, a taproom owner supplied information to the police which made out probable cause for arrest of defendants on charges of conspiracy to commit larceny, burglary, or robbery. The police, however, arrested the defendants without a warrant, on a disorderly person statute of the petty offense category. Upon an immediate search, goods were found on their persons and in their car which later proved to be stolen. Through this evidence they were convicted of burglary and larceny of the goods. The New Jersey Supreme Court noted that without a warrant the defendants could not have been validly arrested on the petty offense statute, but it upheld the validity of the search incident to a warrantless arrest finding that the information supplied by the taproom owner made out probable cause for arrest on conspiracy to commit larceny, burglary, or robbery. The Court then went on to say:

> "The question then is whether it should matter that the arresting officer selected one of the known bases of arrest rather than another, and that, hypothetically for our immediate discussion, the basis selected is later adjudged to be inadequate. . . . It would be a windfall to the criminal, and serve no laudable end, to suppress evidence of his guilt upon the fortuitous ground that the arresting officer, who knew of several bases for the arrest, selected one a judge later found inadequate." 254 A.2d 772.

In the case at bar, the description of the modus operandi of the defendants, given to the officers by the reliable source, suggested that something illegal was afoot. What exactly the police intended to charge the defendants with, could not have been determined conclusively when the opportunity for arrest presented itself, but certainly an eventual charge of auto theft or theft of the goods in the auto would at the time have appeared probable. Under Zito, therefore, the warrantless arrest was legal and valid.

Defendants argue the invalidity of the arrest also on the ground that

the record fails to make out the commission of the crime of auto tampering, and presumably any other crime associated with automobiles. What defendants assert is needed under New Jersey law is the testimony of the owners of the victimized automobiles to demonstrate lack of consent. To require the negation of consent before the arrest clearly is absurd. Probable cause and not absolute certainty that a crime is being or has been committed is the standard for making an arrest. The police are allowed, as they must be, to make and draw logical conclusions in determining probable cause. The logical conclusion to be drawn from a situation in which the driver of an automobile pulls up next to an empty parked vehicle, and while still in the car, reaches across and appears to be trying keys in the lock of that parked vehicle, and then moves on and repeats the same procedure at another vehicle apparently chosen somewhat at random is that the owners did not give their consent. If this issue had to be decided conclusively before arrest, many fewer arrests for auto theft could ever be made.

■ Had the matter gone to trial, at least one of the owners of the vehicles could have testified since a license number of one of the "victim" automobiles was obtained and given to the police. (N.T. 57–58). Even if no owner had been found, an acquittal does not invalidate that which was at the time a lawful arrest. Strelecki v. Coan, 97 N.J.Super. 279, 235 A.2d 37 (1967).

■ Defendant Nazarok alone raises a further point to show that the arrest was illegal as to him. He asserts that since he was never identified by the witness James Schwab as having been involved in the incidents in question, the police officers had no cause to arrest him. It is evident from the testimony of Schwab and of the police officers at the hearing that while the former perhaps intended to identify only Rickus, the latter understood the identification to have been as to both defendants. (N.T. 108, 329–331) in determining whether or not an officer had probable cause to arrest without a warrant, we look to what he reasonably understood to be true. Whereas the officers may have accepted as fact that which may not have been fact in the courtroom sense, still it is his understanding of the facts that we probe in determining probable cause existed. See State v. Burnett, 42 N.J. 377, 201 A.2d 39 (1964). Here, although perhaps through a misunderstanding, Officer Robertson believed that Schwab identified both men and consequently there existed probable cause to arrest Nazarok as well as Rickus.

We find that the police were proper in making a warrantless arrest of both defendants under the circumstances, having probable cause that at least a misdemeanor punishable by imprisonment of over one year had been committed. The personal searches pursuant to the arrest are, therefore, valid.

## II.

Defendants contend secondly that evidence found in the blue Chevrolet was seized without a warrant in violation of their Fourth and Fourteenth Amendment rights and must be suppressed. Even assuming the illegality of the search, a determination we need not make, we find that the defendants lack the requisite standing to challenge it.

■ Defendant Rickus in his testimony at the Suppression Hearing, specifically stated that he and Nazarok had not been in nor had they seen a blue Chevrolet on the day in question, but had arrived and were planning to leave the Mall in Nazarok's silver gray Cadillac. (N.T. 250, 251, 283). These statements denying any association, legitimate or illegitimate, with the blue Chevrolet, in effect leaves the defendants without any interest recognizable at law with regard to the privacy of the contents of the blue Chevrolet.

The requirements for standing to challenge a search were discussed extensively in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). In rejecting certain distinc-

tions of tort and property law concerning the requirements for standing, the Court stated:

> "No just interest . . . will be hampered by recognizing that anyone *legitimately* on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him. This would of course not avail those *who, by virtue of their wrongful presence,* cannot invoke the privacy of the premises searched." 362 U.S. at 267, 80 S.Ct. at 734 (Emphasis added.)

▄▄▄ It is basic that Fourth Amendment rights are personal to those alone who assert their interest in the object of the search and seizure and cannot be asserted vicariously. Having chosen to affirmatively deny any interest in or association with the blue Chevrolet, the defendants cannot assert Fourth Amendment rights with respect to the same and to its contents and object to the legality of the search. The present case is akin to United States v. Toliver, 433 F.2d 867 (1970) wherein the Court stated:

> "The government contends that appellant has no standing to challenge the seizure of the contraband at the bridge. It points out that appellant was not present at the time and has never claimed a possessory interest in or control over, the Oldsmobile. Therefore under the teachings of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and the decision of this court in Diaz-Rosendo v. United States, 357 F. 2d 124 (9th Cir.), cert. denied, 385 U. S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83 (1966), appellant has no position to object." 433 F.2d at 869.

The cases in this Circuit confirm this holding. United States v. Grosso, 358 F.2d 154 (3rd Cir. 1966); United States v. Konigsberg, 336 F.2d 844 (3rd Cir. 1964). See also Fox v. United States, 381 F.2d 125 (9th Cir. 1967).