**STATE of Iowa, Appellee,**

**v.**

**Gerald W. OSBORN, Appellant.**

**No. 54973.**

Supreme Court of Iowa.

Sept. 19, 1972.

David W. Newell, Muscatine, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., Garry D. Woodward, County Atty., for appellee.

MASON, Justice.

Gerald W. Osborn was charged by county attorney's information with the crime of burglary without aggravation contrary to

section 708.3, The Code. He appeals from the sentence on a jury verdict convicting him of the crime charged.

At the time of the incident giving rise to this prosecution, Thomas Rock and his wife Sue lived in a farmhouse approximately four miles north of Muscatine. They leased the house; Paul Satterthwaite, Mrs. Rock's uncle who lived nearby, farmed the land.

April 18, 1971, Satterthwaite had been plowing in a field adjacent to the Rock house. About 7 p. m. he noticed an automobile go into the Rock driveway. After the car had been there an estimated 15 to 20 minutes, Satterthwaite started towards the house to investigate since he knew Rocks were not at home. As he approached the house the car which had attracted his attention was driven out of the driveway and headed north on a county road. Satterthwaite made an effort to get the license number of the vehicle as it passed him. He was unable to do so but did recognize the car as a 1963 or 1964 bluish-gray General Motors product with one headlight out and part of the taillight lens missing. The witness also observed three people in the front seat.

Satterthwaite proceeded to the house and discovered there had been a break in. He telephoned Mrs. Satterthwaite, the Rocks and the Muscatine county sheriff's office. When the sheriff arrived at the scene Satterthwaite described the car and related what he had observed.

Mr. Rock and his wife arrived at their home approximately five minutes after the sheriff. Mrs. Rock was asked to start checking to determine what, if anything, was missing from the home. In the meantime the sheriff and Satterthwaite went into the yard to discuss what had happened. As the two men were talking a car fitting the description given by Satterthwaite passed by headed south toward Muscatine.

The sheriff proceeded to follow the car. The moment he was able to get the license number the officer radioed to have the registration checked. After receiving information that the car, a blue over green Pontiac, four-door sedan, was registered to James Roswell Nott, the sheriff turned on his red light and pulled the car over to a stop about two miles from Rocks. As the sheriff approached the car to examine the operator's license, the driver, James Nott, stepped out of the vehicle to produce his driver's license. The sheriff saw Charles Nott, James' brother, and defendant in the front seat. The officer told James Nott he had stopped him because he had reason to believe "you fellows were involved in a farm theft back up the road."

While the sheriff was checking Nott's license, he observed merchandise in the back seat and on the back floorboards of the car. He asked Nott if he had any objection to his looking in the rear seat. When Nott stated he had none, the sheriff walked to the opposite side of the car, opened the back door and with the aid of his flashlight looked in a sack on the floorboards. It contained an egg carton, a package that appeared to be meat wrapped in white paper, a jar of cheese and some silverware. At this time the sheriff had no knowledge of what was missing from the Rock residence.

The sheriff returned to his own car and radioed his office to call the Rock residence and inquire what, if anything, was missing. He received word the only thing found missing at the time was a pound of Cloverfarm butter. The sheriff had observed such an item among the articles in the Nott car but did not make an arrest. The sheriff advised Nott he could go ahead and if he wanted to talk to Nott later he knew where to find him. Nott then drove toward Muscatine.

The sheriff drove back to the Rock residence to return Satterthwaite who had ridden with him. On the way he received a radio communication that Mrs. Rock's silverware was missing. The sheriff immediately radioed the Muscatine police de-

partment to be on the lookout for the Nott car because the driver and occupants were believed to be involved in a farm theft. The sheriff later heard that the police were stopping the Nott car.

Defendant and the Nott brothers were at the police station when the sheriff arrived. The police had just finished booking James Nott on a defective equipment charge. One officer explained on cross-examination that the reason for this arrest was due to the fact the previous night they had warned Nott about his defective lighting equipment and directed him to park the car.

The sheriff advised the three they were under arrest for burglary and asked James Nott if he could look through his car again which was parked in the police department lot. Nott refused. The sheriff then asked the desk sergeant to call the county attorney and tell him they would need a search warrant. Nott then told the sheriff he would give his permission but the sheriff advised Nott he did not want any oral permission and he would either need written permission or a search warrant. Nott was taken into another room and advised of his constitutional rights in the manner enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. The written permission was prepared by and signed by James Nott in the sheriff's presence. A search of the vehicle followed. The food items and silverware previously described were in a sack in the car.

Later in the evening Rocks came to the police station and Mrs. Rock identified the items taken from James Nott's car as their property taken from their home.

I. In the first of his four assignments of error relied on for reversal, defendant asserts the court erred in failing to sustain his pretrial motion to suppress evidence and in admitting State's exhibits 2 and 3 into evidence at his trial.

In written motion defendant moved the court to suppress all items of personal property seized "as a result of a search made contrary to the provision of the Fourth Amendment of the Constitution of the United States of America" and "testimony of any witness whose identity was discovered as a result of said search and seizure." Attached to this motion was defendant's affidavit asserting that no search warrant was executed authorizing the search; it was not made incidental to arrest, the arrest having been made after the search was conducted; and defendant never consented to the search.

The trial court did not indicate in its ruling denying defendant's motion to suppress the ground or grounds upon which it based the ruling. State v. Brant, 260 Iowa 758, 761–762, 150 N.W.2d 621, 624.

It must be conceded there was no search warrant in existence. Hence, at the outset we are reminded that: "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' " Coolidge v. New Hampshire, 403 U.S. 443, 454–455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564. (emphasis in the original).

This court cited the foregoing statement of law with approval in State v. King, 191 N.W.2d 650, 654 (Iowa 1971).

In the case before us defendant made no objection to the admissibility of the exhibits involved when offered at his trial. Examination of the record does not disclose that the identity of any witness was discovered as fruits of the search and seizure. Defendant's contention thus limited is directed against the initial search made by the sheriff when the Nott car was stopped

some two miles from the Rocks' residence and the seizure at the Muscatine police station of the items offered.

The first question that merits consideration is Osborn's standing to challenge the legality of the search in the circumstances of this case.

In this connection we are concerned only with the problem in those circumstances where a guest in an automobile seeks to challenge legality of a search of an automobile registered and in the possession of another when the fruits of the search are sought to be used against the guest in establishing his guilt of the crime charged.

There is no contention made in support of the trial court's ruling that Osborn consented to the search. In fact, the record discloses the only remarks of any peace officer directed to Osborn were at the police station when the sheriff advised defendant along with the Nott brothers that they were under arrest for burglary. There is no record of any comment or statement made by defendant at any time.

In his motion to suppress and the affidavit attached thereto as shown by the transcript of the trial court proceedings defendant does not challenge the validity of Nott's consent. At the hearing James Nott testified he did not give the sheriff permission to search his car. His brother Charles testified he did not hear James give consent but on cross-examination stated, "I couldn't hear nothing. They were back to Dick's car."

 Amendment 4 to the United States Constitution prohibits "unreasonable searches and seizures." A similar provision is Article I, section 8, of our state constitution. In order to enforce this provision of Amendment 4, the United States Supreme Court adopted a rule excluding from trial illegally seized evidence. However, an accused who attempts to have such evidence excluded must first establish standing to object to the unlawful search. Further, to obtain standing, a litigant can invoke only the violation of his own constitutional rights and not the constitutional rights of a third person. Only the "victim of the unlawful search and seizure" can complain of an unreasonable search. Goldstein v. United States, 316 U.S. 114, 120, 62 S.Ct. 1000, 1003, 86 L.Ed. 1312.

In the landmark case of Jones v. United States, 362 U.S. 257, 260–261, 80 S.Ct. 725, 730–731, 4 L.Ed.2d 697, 702–703, the first Supreme Court discussion of the standing requirement for a search and seizure case, the high court found the reasoning above implicit in the provision of rule 41(e), Federal Rules of Criminal Procedure, requiring that a movant for suppression be a person "aggrieved by an unlawful search and seizure":

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Id. at 261, 80 S.Ct. at 731, 4 L.Ed.2d at 702. See also State v. Shank, 191 N.W.2d 703, 705 (Iowa 1971).

The Jones decision redefines the law of standing in two respects. First, it declares any charge based upon possession confers standing on the defendant. Secondly, the requirement of showing a possessory or proprietary interest in the premises searched or the property seized is relaxed, and "anyone legitimately on premises where a search occurs may challenge its legality * * * when its fruits are proposed to be used against him." Id. at 267, 80 S.Ct. at 734, 4 L.Ed.2d at 705.

As succinctly stated by Judge Lumbard, " * * * [T]he two holdings of Jones— that the offense of possession confers standing and that anyone legitimately on the premises at the time of the search may challenge it—are independently valid." (Emphasis in the original). United States v. Price, 447 F.2d 23, 28 (2 Cir. 1971).

The Supreme Court confirmed this analysis in Mancusi v. DeForte, 392 U.S. 364, 368 n. 5, 88 S.Ct. 2120, 2123 n. 5, 20 L.Ed.2d 1154, 1159, n. 5.

The court, for the first time, phrased the standing requirement in expressly constitutional terms in Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185–186:

" * * * The established principle .is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." Having predicated this conclusion on Jones v. United States, supra, the court continued:

"We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. * * * [citing authorities]

" * * * [W]e think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion." 394 U.S. at 174, 89 S.Ct. at 966–967, 22 L.Ed.2d at 187.

In *Alderman*, the Supreme Court is said to have "reaffirmed the vitality of *Jones*." Kroll v. United States, 433 F.2d 1282, 1288 (5 Cir. 1970). See also United States v. Toliver, 433 F.2d 867, 869 (9 Cir. 1970).

■ Amendment 4 is enforceable against the states through Amendment 14. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Ker v. State of California, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726, 735.

■ The Iowa court has acknowledged that constitutional search and seizure standards enunciated by the United States Supreme Court are unquestionably applicable to the states. State v. Spier, 173 N.W.2d 854, 857 (Iowa 1970).

■ The basic purpose of Amendment 4 is "to safeguard the privacy and security of individuals" rather than property. Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930, 935; *accord*, Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 304, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782, 790. "For the Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 581.

■ However, Amendment 4 protects privacy only to the extent that it prohibits unreasonable searches and seizures of "persons, houses, papers, and effects."

Thus, it is an invasion of his personal right of privacy of person or premises due to an unreasonable search and seizure that Osborn must verify to obtain standing to question the legality of the search of Nott's automobile.

■ Invasion of privacy may be claimed by that person who is charged with an offense of possession; or who has a proprietary or possessory interest in the property seized; or who is legitimately on the premises when the search occurs. Standing proceeds from any of the above.

To be charged with an offense of possession gives rise to a claim of an invasion of privacy, and standing to question the legality of the search and seizure becomes automatic. In Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247, 1256, Mr. Justice Harlan for the court interpreted the "automatic standing rule" of *Jones*:

"[W]hen, as in *Jones*, possession of the seized evidence is itself an *essential element* of the offense with which defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence." (Emphasis supplied)

The county attorney's information alleged in substance that Osborn committed the offense of burglary without aggravation in violation of sections 708.1 and 708.3, The Code, 1971. Section 708.1, The Code, provides in part:

"If any person break and enter any dwelling house in the nighttime, with intent to commit any public offense * * * he shall be guilty of burglary * * *."

Under the statute the crime of burglary consists of five ingredients: (1) a breaking, (2) an entry, (3) committed at night, (4) into the dwelling of another, and (5) with the intent to commit a public offense.

 It is apparent the possession of property recently stolen in connection with a burglary is not an "essential element" of the crime of burglary, even though the unexplained possession of recently stolen property may give rise to an inference of the guilt of the possessor of the crime of larceny. State v. Everett, 157 N.W.2d 144 (Iowa 1968). Section 708.1, The Code, does not permit conviction upon proof alone of Osborn's possession of the items stolen from the Rock home nor does it even require such proof to convict him on a charge of burglary. The "automatic standing rule" of *Jones* is inapplicable here.

In United States v. Sacco, 436 F.2d 780 (2 Cir. 1971), defendant was charged with conspiring to transport stolen goods in interstate commerce. The court held that the defendant did not have standing in light of the nature of the crime charged: "Proof of possession would have been insufficient to support the charge of conspiracy to transport stolen goods in interstate commerce; in fact, possession would not appear even to be a prerequisite to conviction on such a charge." *Id.* at 784.

 Where a proprietary or possessory interest in the property is present and that property seized, invasion of privacy exists and there is standing. As to this second ground sustaining standing, we cannot presume that Osborn had such interest since he failed to allege a possessory interest in the goods seized from the Nott car. Nor is it likely he would have standing by virtue of an interest in the stolen goods had he properly raised the issue. The *Sacco* court, supra, under analogous circumstances, stated:

"[A]s this court said in United States v. Lopez, 420 F.2d 313, 316, (2 Cir. 1969), 'it does not follow, that a "possessory interest" in goods seized from another's premises is sufficient in itself to entitle a defendant to suppression.' In United States v. Bozza, 365 F.2d 206, 223 (2 Cir. 1966), we made it plain that the values sought to be protected by the Fourteenth Amendment are not 'served by holding that a thief who has left evidence of his crime on the premises of a confederate is subrogated to the latter's right to complain of a search and seizure, * * * *". United States v. Sacco, 436 F.2d 780, 784 (2 Cir. 1971).

When presence on the premises at the time of search is legitimate, there is invasion of privacy and the third ground for standing is affirmed. Thus, it is essential that Osborn be classified as one "legitimately on the premises where a search occurs" thereby suffering an invasion of his personal privacy, if standing is to obtain here. Moreover, his claim of such invasion of privacy depends "not upon a property right in the invaded place but upon whether the area was one in which there was "a reasonable expectation of freedom from governmental intrusion." Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154, 1159. The essential issues, therefore, are whether an automobile is such a place and, if so, whether a mere passenger by virtue of his lawful presence may invoke the privacy of the "premises" searched.

 It is patently clear an automobile is a "constitutionally protected area." Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Minimally, the owner harbors "a reasonable expectation" that his

individual privacy is protected against certain kinds of governmental intrusion. But does that expectation attach to a passenger "legitimately" seated in the automobile at the time of the search? *Jones* expressly answers in the affirmative.

 In accordance with the principles stated in *Jones*, it must be conceded that in the light of Osborn's status as a guest-passenger in the automobile searched, he could be properly classified as one legitimately on the premises and by proper motion and proof tender the issue of whether there was an invasion of his personal right of privacy as a consequence of an alleged unreasonable search and seizure thus requiring exclusion of exhibit 2 (a bag of detergent taken from the Rock residence) and exhibit 3 (a jar of Cheese Whiz, a package of chopped ham, eggs and a head of lettuce, also taken from the Rock home).

Such determination will in no way show an inconsistency in decisions on the part of this court but rather will adhere to the persisting interpretation given to *Jones*. State v. Shank, 191 N.W.2d 703 (Defendant not in vehicle searched).

Among the courts of other jurisdiction supporting this position in whole or in part are: United States v. Peisner, 311 F.2d 94 (4 Cir. 1962); Bustamonte v. Schneckloth, 448 F.2d 699 (9 Cir. 1971); Paxton v. State, 263 N.E.2d 636 (Ind.1970); Commonwealth v. Lanoue, 356 Mass. 337, 251 N.E.2d 894; Hamburg v. State, 248 So.2d 430 (Miss. 1971); State v. Parsons, 83 N.J.Super. 430, 200 A.2d 340; People v. Miller, 26 Mich. App. 665, 182 N.W.2d 772; Grundstrom v. Beto, 273 F.Supp. 912 (N.D.Texas 1967); People v. Smith, 35 Misc.2d 533, 230 N.Y.S.2d 894.

We are aware that some recent decisions involving the search of an automobile require either ownership or possession of the vehicle or the property seized. However, our reading of these decisions lead us to the conclusion that those courts which categorically deny a mere passenger standing ignore compliance with the *Jones* principle of "legitimately on the premises." Decisions adhering to this view include: State v. Patterson, 252 So.2d 398 (Fla.App.1971); People v. French, 33 Ill.2d 146, 210 N.E.2d 540; State v. Littlefield, 161 Me. 415, 213 A.2d 431; State v. Heitman, 473 S.W.2d 722 (Mo.1971); Petition of Gallagher, 150 Mont. 476, 436 P.2d 530; State v. Lucero, 70 N.M. 268, 372 P.2d 837; State v. Craddock, 272 N.C. 160, 158 S.E.2d 25; Jernigan v. State, 485 P.2d 778 (Okl.Cr.1971).

 However, once an objector has established qualifications as a "person aggrieved" by an unlawful search and seizure, he must comply with this requirement set forth in Jones v. United States, 362 U.S. 257, at 261, 80 S.Ct. 725, at 731, 4 L.Ed.2d 697, at 702, in order to successfully challenge admissibility of relevant evidence on the basis of illegality of the search:

"Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

 Examination of Osborn's motion and affidavit attached establishes that he failed to sustain either burden imposed upon him by the quoted statement from *Jones*.

It should be pointed out that the term "person aggrieved" is the terminology used in Federal Rule of Criminal Procedure 41 which deals with the suppression of illegally seized evidence. State v. Shank, 191 N.W.2d 703, at 705.

"The 'person aggrieved' language is from Fed.Rule Crim.Proc. 41(e). *Jones* thus makes clear that Rule 41 conforms to the general standard and is no broader than the constitutional rule." (Emphasis in the original). Alderman v. United States, 394 U.S. 165, at 173 n. 6, 89 S.Ct. 961, at 966 n. 6, 22 L.Ed.2d 176, at 186, n. 6.

Accordingly, it was not error for the court to permit the introduction of the evidence found in the Nott automobile.

II. In another assignment of error defendant contends the trial court erred in allowing the State to amend the county attorney's information after commencement of trial.

The record discloses that after the jury was impaneled and sworn but before any testimony was introduced, the State made application to file an amended and substituted information. The information originally filed charged defendant with burglary of a dwelling house belonging to Edwin Harmson, route 4, Muscatine. On the opening day of the trial, after selection of the jury, the county attorney requested permission to file an amended and substituted information charging defendant with burglary of the dwelling house of Thomas Rock and Sue Rock, Bloomington Township, Muscatine County. Defendant interposed an objection to this amendment on the ground that it constituted a new offense.

The trial court in permitting the amendment and substitution pointed out that during the selection of the jury the prosecuting attorney and defendant's counsel stated Thomas Rock was the owner of the dwelling entered and inquiry was made of some prospective jurors as to their possible acquaintance with Thomas Rock.

The problem of allowing amendment to an information after the jury has been impaneled and sworn is discussed in State v. Crutcher, 174 N.W.2d 449, 452 (Iowa 1970). In line with the conclusion reached in that decision we are not prepared to say the trial court abused its discretion in permitting the amendment. Defendant's contention under this assignment is without merit.

III. In still another assignment defendant asserts the trial court erred in failing to give his requested instruction regarding the lesser included offense of breaking and entering.

Defendant seeks to support this assignment by maintaining there is evidence which would justify a jury's finding the incident took place in the daytime. Examination of the record does not support this contention. There is not a scintilla of evidence that the breaking and entering at the Rock home occurred other than in the nighttime as that term is ordinarily defined. See State v. Dougherty, 186 Kan. 820, 821, 352 P.2d 1031, 1032, where this statement appears:

"It is the general rule, in the absence of a statutory provision to the contrary, that the 'nighttime,' within the definition of burglary, is, as was held at common law, a period between sunset and sunrise during which there is not daylight enough by which to discern a man's face. * * * [citing authorities]." See also 13 Am.Jur.2d, Burglary, section 22; 12 C.J.S. Burglary § 14.

There was no evidence which would warrant the court in submitting the included offense urged to the jury.

This assignment cannot be sustained.

IV. In his remaining assignment defendant maintains the court erred in denying his motion for mistrial.

This assignment arises under these circumstances occurring at trial.

On cross-examination of the sheriff defendant had made inquiry regarding certain clothing worn by defendant at the time of arrest.

Redirect examination of the sheriff, defendant's objection and motion to strike and the court's ruling thereon follows:

"Q. And you were questioned as to what Mr. Osborn was wearing and so on, and you did not recall, but how did you know that this was Mr. Osborn that was in the car? MR. NEWELL: I object to that as being incompetent, irrelevant, immaterial, having nothing to do with what I covered on cross-examination. THE COURT: Overruled. A. I have known Mr. Osborn for several years, number of years approximately ten, and I have had

him in my custody on prior occasions. I know him personally.

"Q. Sheriff, you do know the man? A. I know the man on sight, personally. MR. NEWELL: I move to strike the remark about being in custody as not being responsive to the question. THE COURT: That remark may go out and the jury should not pay any attention to it whatsoever."

If we correctly understand defendant's written argument he maintains the sheriff's statement regarding defendant's "prior criminal record" was prejudicial. By this we take him to mean that the testimony under consideration tended to place defendant's character in issue.

In the first place we think defendant claims too much in contending the sheriff's statement is one concerning defendant's "prior criminal record."

■ In any event, a defendant in a criminal case may elect to put his character in issue by producing evidence as to his good character as bearing on the probability or nonprobability of his guilt of the crime charged. This principle is based upon the philosophy that a man of good character would not be likely to commit the crime of which he is accused. However, until defendant elects to offer any evidence of "character" or "reputation" as bearing on the probability or nonprobability of his being guilty of the crime charged, the State cannot put the matter in issue. State v. Hobbs, 172 N.W.2d 268, 271 (Iowa 1969), and authorities cited.

Defendant did not take the stand nor did he offer any evidence in defense. In other words, defendant did not put his character in issue.

■ In this connection that portion of the sheriff's testimony wherein he said, "I have known Mr. Osborn for several years, number of years approximately ten," cannot be logically claimed to put defend-

ant's character in issue. It is well known that most peace officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a peace officer does not necessarily convey the impression that he has a criminal record. See State v. Pitchford, 324 S.W.2d 684 (Mo.1959); State v. Harris, 325 S.W. 2d 352 (Mo.1959); and State v. Robertson, 328 S.W.2d 576 (Mo.1959).

It could be claimed the testimony was relevant as supporting the officer's identification of Osborn as an occupant of the Nott car when it was first stopped by the officer near Rock's home.

■ The second part of the sheriff's answer—"I have had him in custody on prior occasions"—is more troublesome. Consideration of the problem compels the conclusion that this portion of the sheriff's answer did not tend to put defendant's character in issue since it did not imply that Osborn had ever been tried, convicted or even charged with any crime or in any way intimate defendant was of bad character or guilty of prior criminal conduct.

Nothing said herein, however, is to be construed as placing our stamp of approval on this type of testimony, regardless of whether the reference was intentional or inadvertent. We specifically condemn the tactics often employed by over zealous witnesses of injecting clearly incompetent testimony, not otherwise admissible, which implies the accused has a prior criminal record, in an obvious effort to create prejudice in the minds of the jury.

■ Defendant's other argument that the question put to the sheriff was beyond the scope of defendant's cross-examination is without merit. This is a matter that rests largely in the discretion of the trial court and we find no abuse.

The assignment is without merit.

The case is therefore

Affirmed.

All Justices concur except MOORE, C. J., and LeGRAND, J., who concur in the result and UHLENHOPP, McCORMICK and REYNOLDSON, JJ., who dissent.

UHLENHOPP, Justice (dissenting).

I dissent from division III of the court's opinion and from the result. Otherwise I concur in the court's opinion, except for the basis of division I.

I. Division I of the court's opinion upholds the trial court's refusal to suppress the stolen goods. That division involves the *standing* of a person to object to a search and seizure and also *consent* to a search.

A person has standing to object to the offering in evidence against him of the fruits of a search and seizure if he was legitimately on the premises where the search occurred. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. James Nott, Charles Nott, and defendant were riding in the front seat of James Nott's car. The evidence contains no suggestion that defendant was a trespasser in the car or that he was not rightfully in it. On the contrary, the three men were together. Hence any of them had standing to challenge an illegal search of the car.

But was the search illegal? James Nott was the owner and driver of the car. When the sheriff initially stopped the car, James Nott said he had no objection to the sheriff's looking in the back seat. The sheriff did so. This consent search, if it was a search, revealed the goods which the sheriff later learned to be stolen.

Later at the police station, when the sheriff asked that a search warrant be obtained, James Nott again consented to a search. Out of an abundance of caution, the sheriff required that the consent be in writing. The stolen goods were thus obtained.

Manifestly, this is a case of a consent search. The trial court properly refused to suppress the stolen goods.

II. Division III of the court's opinion upholds the trial court's refusal to submit breaking and entering as an included offense to the charge of burglary.

To establish burglary, the State had to prove that the offense occurred in the nighttime. Code, 1971, § 708.1. Defendant did not admit that the incident occurred at night. Seldom does a party having the burden of proving a proposition establish it as a matter of law. The State did not do so here. Hence it was for the jury to say whether the State proved by the evidence beyond a reasonable doubt that the offense occurred in the nighttime. If the jury was not so convinced, then the conviction could not be for more than breaking and entering under § 708.8.

Breaking and entering should have been submitted as an included offense. For that reason the judgment should be reversed.

REYNOLDSON, J., joins in this dissent.

McCORMICK, Justice (dissenting).

I respectfully dissent from Divisions III, IV and the result.

I. I believe trial court erred in refusing to submit the included offense of breaking and entering under Code § 708.8. The only element of burglary not required to be established to prove breaking and entering is occurrence of the offense in the nighttime. Cf. §§ 708.1 and 708.8, The Code. The offense must occur either at night or during the day: if at night it is burglary and if in daytime it is breaking and entering. Therefore, if a jury question exists in a burglary trial as to whether the offense happened at night, it is necessary to submit the included offense of breaking and entering. State v. Jordan, 87 Iowa 86, 54 N.W. 63 (1893). All offenses necessarily included in the charge upon which there is sufficient evidence to justify a finding of guilt must be submitted. Exclusion of an included offense is in effect

a directed verdict on it for defendant. If defendant in this case would have been entitled to a directed verdict were he charged only with breaking and entering, the offense was properly excluded; otherwise not. State v. Pilcher, 158 N.W.2d 631, 633 (Iowa 1968); cf. State v. Bradford, 175 N.W.2d 381, 382 (Iowa 1970).

Nonsubmission of the included offense could be justified here only if the evidence established as a matter of law the alleged offense occurred in the nighttime. There was testimony the offense occurred between 6:30 and 7:00 p. m. April 18, 1971. There was no evidence as to time of sunset. No light was used in the break-in other than a light that went on when the refrigerator was opened. Mr. Satterthwaite saw the Nott car at the dwelling four or five hundred yards from where he was plowing without lights. He said, "It was not dark when I saw the car at first. It was getting dark."

"Nighttime" is that period between sunset and sunrise during which there is not daylight enough by which to discern a man's face. State v. Bell, 153 Conn. 540, 219 A.2d 218 (1966); State v. Dougherty, 186 Kan. 820, 352 P.2d 1031 (1960); Bowser v. State, 136 Md. 342, 110 A. 854 (1920); State v. Perkins, 342 Mo. 560, 116 S.W.2d 80 (1938); Klieforth v. State, 88 Wis. 163, 59 N.W. 507 (1894); 13 Am. Jur.2d Burglary § 22; 12 C.J.S. Burglary § 14. In *Bell* the court observed, "* * * [I]t is common knowledge that, immediately after sunset, there is a period of twilight in which visibility, although diminishing, is not overcome by darkness to the extent that the features of another cannot be discerned." 219 A.2d at 219; cf. State v. Perkins, supra; Klieforth v. State, supra.

The evidence in this case falls far short of proving as a matter of law the offense happened at night. It was a jury question and the jury could reasonably find it was daytime. See State v. Jordan, supra. It was reversible error upon this record to refuse to submit the included offense of breaking and entering.

II. I also believe trial court erred in refusing to grant a mistrial based upon the sheriff's testimony he had defendant "in custody on prior occasions." It is unreasonable to suggest as does the majority that this testimony "did not imply that Osborn had ever been tried, convicted *or even charged with any crime or in any way intimate defendant was of bad character or guilty of prior criminal conduct.*" The sheriff's statement was obviously a calculated effort on his part to tell the jury defendant had been in trouble before and thus poison the jury's view of his character. Trial court's admonition could not erase the damage from this innuendo. It deprived defendant of a fair trial. See State v. Levy, 160 N.W.2d 460, 467 (Iowa 1968). The motion for mistrial should have been sustained.

I would reverse and remand for new trial.